UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————
JEROME CARTER,                                    )
                                                  )
      Plaintiff,                              )
                                                  )
v.                                                )     Civil Action No.: 05-1712 (RMC)
                                                  )
THE WASHINGTON POST,                              )
                                                  )
      Defendant.                              )
                                                  )
—————————————————————

**DEFENDANT THE WASHINGTON POST'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS THE COMPLAINT**

Alison Marshall (D.C. Bar No. 426168)
Jacqueline M. Holmes (D.C. Bar No. 450357)
Michelle N. Johnson (D.C. Bar No. 491910)
JONES DAY
51 Louisiana Avenue N.W.
Washington, D.C.  20001
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

ATTORNEYS FOR DEFENDANT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT .......................................................................................................................... 7

    I.    Plaintiff's Complaint Fails to State a Claim Upon Which Relief Can be
        Granted ....................................................................................................................... 7

        A.    Plaintiff's Fifth Amendment Claim Should be Dismissed Because
               Plaintiff Does Not Allege That There was any Governmental
               Action in this Case .................................................................................. 9

        B.    Plaintiff Has Failed to State a Claim Under Title VII .............................. 10

               1.    Plaintiff Fails to State a Hostile Work Environment Claim
                      Under Title VII ........................................................................... 10

               2.    Plaintiff Has Failed to Allege That He Engaged in
                      Protected Activity Sufficient to Support a Title VII
                      Retaliation Claim ....................................................................... 12

        C.    Plaintiff Does Not Adequately Allege a Claim Under the ADA ............. 13

               1.    Plaintiff's Alleged Disability is not Cognizable Under the
                      ADA ............................................................................................ 14

               2.    Plaintiff Fails to Allege that he Requested and Was Denied
                      a Reasonable Accommodation .................................................... 15

    II.    Plaintiff's Title VII and ADA Claims Should be Dismissed Because
        Plaintiff Has Failed to Exhaust His Administrative Remedies. .......................... 16

        A.    Plaintiff's EEOC Charge Does Not Encompass Any Claims Under
               Title VII for a Hostile Work Environment or Retaliation. ....................... 17

        B.    Plaintiff's Administrative Charge Failed to Assert the Disability
               Discrimination and Failure to Accommodate Claims that He
               Asserts in His Complaint. ....................................................................... 18

    III.    Plaintiff Has Also Failed to Timely File His Action in This Court. .................... 22

CONCLUSION .................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

## Cases

*Anderson v. USAir, Inc.*, 818 F.2d 49 (D.C. Cir. 1987)...................................................................9

*Broderick v. Donaldson*, 338 F. Supp. 2d 30 (D.D.C. 2004),
    *appeal pending*, No. 04-5404 (D.C. Cir. filed Nov. 30, 2004) ..........................................13

*Brooks-Miller v. England*, 357 F. Supp. 2d 197 (D.D.C. 2004)..........................................8, 11, 16

*Brown v. D.C. Transit Sys., Inc.*, 523 F.2d 725 (D.C. Cir. 1975).....................................................9

*Brown v. District of Columbia*, 251 F. Supp. 2d 152 (D.D.C. 2003) .............................................18

*Bugg-Barber v. Randstad US, L.P.*, 271 F. Supp. 2d 120 (D.D.C. 2003) ........................16, 21, 22

*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001).............................................................10

*Coleman v. Potomac Elec. Power Co.*, 310 F. Supp. 2d 154 (D.D.C.),
    *aff'd*, No. 04-7043, 2004 WL 2348144 (D.C. Cir. Oct. 19, 2004) ..............................11, 23

*Conley v. Gibson*, 355 U.S. 41 (1957) .............................................................................................7

*Cutler v. Hamden Bd. of Educ.*, 150 F. Supp. 2d 356 (D. Conn. 2001)..........................................15

*Darby v. S.B. Ballard Constr. Co.*, No. Civ.A. 05-199,
    2005 WL 2077299 (M.D. Fla. Aug. 26, 2005) .................................................................6

*Duncan v. Washington Metro. Area Transit Auth.*, 240 F.3d 1110
    (D.C. Cir.), *cert. denied,* 534 U.S. 818 (2001)..................................................................15

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 (D.C. Cir. 1997),
    *remanded to* 20 F. Supp. 2d 66 (D.D.C. 1998), *aff'd*, 254 F.3d 315
    (D.C. Cir. 2000) (Table) .................................................................................................3, 7

*Evans v. Golub Corp.*, No. Civ.A. 96-3889, 1997 WL 349952 (S.D.N.Y. June 24, 1997)...........13

*Forman v. Small*, 271 F.3d 285 (D.C. Cir. 2001), *cert. denied,*
    536 U.S. 958 (2002)........................................................................................................12

*Haase v. Sessions*, 835 F.2d 902 (D.C. Cir. 1987) ........................................................................17

*Harris v. Forklift Sys.*, 510 U.S. 17 (1993)....................................................................................10

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) .............................................................................3

*Hunt v. D.C. Dep't of Corrections*, 41 F. Supp. 2d 31 (D.D.C. 1999) ....................................18, 23

*Jeffers v. Chao*, No. Civ.A. 03-1762, 2004 WL 3257069 (D.D.C. Sept. 21, 2004),
    *reconsid. denied*, No. Civ.A. 03-1762, 2005 WL 1432374 (D.D.C. June 14, 2005).........16

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ....................................................8

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
    507 U.S. 163 (1993)................................................................................................................22

*Marshall v. Federal Express Corp.*, 130 F.3d 1095 (D.C. Cir. 1997) ...............................19, 20, 21

*Moreno v. Brownlee*, 85 Fed. Appx. 23, 27 (5th Cir.), *cert. denied*,
    541 U.S. 1053 (2004)..............................................................................................................14

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ..................................................11

*O'Neal v. England*, No. Civ. A. 02-0172, 2003 WL 21788957
    (D.D.C. Feb. 25, 2003) ....................................................................................................10, 11, 12

*Park v. Howard Univ.*, 71 F.3d 904 (D.C. Cir. 1995)........................................................17, 18, 19

*Powell v. Washington Metro. Area Transit Auth.*, 238 F. Supp. 2d 160 (D.D.C. 2002) ...............23

*Public Utilities Comm'n v. Pollak*, 343 U.S. 451 (1952) ...................................................................9

*Rasekh v. Veneman*, 357 F. Supp. 2d 70 (D.D.C. 2004).................................................................13

*Rochon v. Ashcroft*, 319 F. Supp. 2d 23 (D.D.C. 2004) ..................................................................8

*Rodriguez v. Beechmont Bus Serv.*, 173 F. Supp. 2d 139 (S.D.N.Y. 2001) ...............................9, 12

*San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*,
    483 U.S. 522 (1987).................................................................................................................9

*Sisay v. Greyhound Lines, Inc.*, 34 F. Supp. 2d 59 (D.D.C. 1998)................................................19

*Smith v. Dalton*, 971 F. Supp. 1 (D.D.C. 1997) ...........................................................................23

*Smith v. District of Columbia*, No. Civ.A. 02-418, 2005 WL 488824
    (D.D.C. Feb. 28, 2005) .........................................................................................................22

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000)................................................8

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).........................................................................8

*Taye v. Amundson*, 908 F. Supp. 21 (D.D.C. 1995) ....................................................................22

*Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) ...................................14, 15

*Wilbur v. C.I.A.*, 273 F. Supp. 2d 119 (D.D.C. 2003), *aff'd,*
     355 F.3d 675 (D.C. Cir. 2004) ........................................................................................17

**Statutes and Rules**

42 U.S.C. § 12102(2) ................................................................................................................14

42 U.S.C. § 12112(a) ................................................................................................................14

42 U.S.C. § 12117(a) ................................................................................................................19

42 U.S.C. § 2000e-5(f)(1) ....................................................................................................22, 23

Fed. R. Civ. P. 12(b)(1) ........................................................................................................2, 7, 16

Fed. R. Civ. P. 12(b)(6) .........................................................................................................1, 7,

## PRELIMINARY STATEMENT

This Court should dismiss Plaintiff's complaint against The Washington Post ("The Post") in its entirety for several compelling reasons:

*First*, pursuant to Federal Rule of Civil Procedure 12(b)(6), Count II of Plaintiff's complaint should be dismissed because it fails to state any claim upon which relief can be granted. In Count II, Plaintiff attempts to claim that his Fifth Amendment rights were violated when he had to undergo a "mandatory psychiatric evaluation[,]" and was subsequently denied a copy of this evaluation. Complaint ("Compl.") ¶¶ 49-50. However, it is well established that governmental action is a prerequisite for any claim alleging a violation of Fifth Amendment rights, an element clearly lacking in this case. Indeed, Plaintiff specifically alleges that The Post (the only defendant in this action) is a private employer, and he has failed to allege any involvement by any governmental actor that could provide the basis for his Fifth Amendment claim. Accordingly, Count II should be dismissed.

Plaintiff's Title VII (Count I) and ADA (Count III) claims likewise fail to state claims upon which relief can be granted. Specifically, in Count I, Plaintiff claims that he was the victim of a hostile work environment and suffered retaliatory/adverse actions during his employment in violation of Title VII. Compl. ¶¶ 20-47. But Plaintiff fails to allege that The Post discriminated against him *because of* his race (or any other protected category), or subjected him to a *racially* hostile environment, and thus he fails to state a claim under Title VII. Plaintiff also fails to allege that he engaged in any activity protected by Title VII -- a necessary element of a retaliation claim. Count I should therefore, be dismissed. In Count III, Plaintiff alleges that he has a "chronic right shoulder strain and carpel [sic] tunnel syndrome" and that The Post failed to accommodate his "condition to a position involving less strenuous physical labor." *Id.* ¶¶ 52, 56. This claim should be dismissed because Plaintiff's complaint fails to allege that he requested and

was denied a reasonable accommodation -- a required element of any failure to accommodate claim. Moreover, Plaintiff's own allegations make it clear that he does not even suffer from a disability within the meaning of the ADA. For these reasons, Count III should also be dismissed.

*Second*, in any event, this Court lacks jurisdiction over Plaintiff's Title VII and ADA claims because Plaintiff failed to exhaust his administrative remedies. The administrative charge Plaintiff submitted to the Equal Employment Opportunity Commission ("EEOC") does not include any of the claims that Plaintiff now seeks to bring in his complaint; it (i) includes no Title VII claim; (ii) makes no mention of any allegedly hostile work environment or retaliation; and (iii) does not allege any failure to accommodate. Rather, the charge simply claims that The Post improperly required Plaintiff to provide documentation to support his claim for disability leave -- not that it discriminated against him *because of* any such disability, or failed to accommodate his disability. Accordingly, these claims should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

*Finally*, dismissal of Plaintiff's Title VII and ADA claims is also warranted because, based on Plaintiff's own allegations, he failed to file this action within 90 days after receipt of his right-to-sue notice from the EEOC. Thus, these counts fail both substantively and procedurally.

In sum, Plaintiff's complaint should be dismissed in its entirety.

## STATEMENT OF FACTS[1]

### A.    **Background**

The Post hired Plaintiff Jerome Carter, an African American, on June 28, 1989 as a pressroom general worker. Compl. ¶¶ 3, 15. He remained employed in this position until his termination on January 26, 2005. *Id.* As a pressroom general worker, Plaintiff was responsible

for maintaining the cleanliness of the pressroom, including the presses and other machinery, and properly discarding newspaper waste. *Id.* ¶ 19.

**B.    The October 2000 Incident With Mr. Mornot**

Plaintiff alleges that on October 29, 2000, his second line supervisor, Bernard Mornot, "screamed and cursed at Plaintiff for going to the payroll office to get the correct time off for 'compassion leave' . . . ." *Id.* ¶ 21. During this confrontation, Mr. Mornot also allegedly pushed and shoved Plaintiff. *Id.* ¶ 22. Plaintiff complained of the incident, and met with Post management to discuss it on March 27, 2001. Compl., Ex. 3 (March 28, 2001 Letter from J. Carter to J. Coley)[2]; *see also* Compl. ¶ 23. In this meeting, Mr. Mornot apologized for his role in the incident. Compl., Ex. 3 (March 28, 2001 Letter from J. Carter to J. Coley).

The following day, on March 28, 2001, Plaintiff filed a written complaint regarding the Mornot incident. Compl., Ex. 3 (March 28, 2001 Letter from J. Carter to J. Coley, at 2). The Post formally investigated this complaint, and met with Plaintiff on May 31, 2001 to discuss the results of that investigation. *See* Compl., Ex. 3 (June 7, 2001 Letter from E. Brinkman to J. Carter). During this meeting, Plaintiff became agitated and walked out of the meeting. *Id.* Pressroom Superintendent Brinkman followed Plaintiff and encouraged him to return, warning him that if he failed to do so he would be subject to discipline. *Id.* Plaintiff returned, and the meeting was completed. Shortly thereafter, however, Plaintiff asked to leave work early. *Id.* Mr. Brinkman denied the request because, given the late hour, he would be unable to find a

---

(continued...)

[1] The facts contained in the Statement of Facts are drawn directly from Plaintiff's complaint and the exhibits attached to the complaint, and are taken as true for purposes of this motion only. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

[2] Consideration of documents attached to Plaintiff's complaint is appropriate without converting The Post's Motion to Dismiss to one for summary judgment. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997), *remanded to* 20 F. Supp. 2d 66 (D.D.C. 1998), *aff'd*, 254 F.3d 315 (D.C. Cir. 2000) (Table).

replacement for Plaintiff. *Id.* Plaintiff then left work anyway. As a result, he was suspended for three days; he served this suspension on June 1, June 2, and June 5, 2001. *Id.*

### C.    Plaintiff's Alleged Injury

Plaintiff alleges that on or about June 1, 2001 (one of the dates on which he was suspended), he injured his shoulder and neck while at work. Compl. ¶ 24. On June 7, 2001, The Post sent Plaintiff a letter documenting the bases for his already-served suspension. Compl., Ex. 3 (June 7, 2001 letter to J. Carter from E. Brinkman). Nine months later, Plaintiff formally disputed the grounds for his suspension, and The Post's version of events, claiming that The Post suspended him solely to have a reason to deny Plaintiff's workers' compensation claim. Compl., Ex. 3 (March 26, 2002 Letter from J. Carter to P. Dunn).

### D.    Plaintiff's Complaints Several Years Later About Workload and Subsequent Absences.

Sometime in April 2004, several years after the incident with Mr. Mornot and his workplace injury, Plaintiff complained to Mr. Mornot and Bruce Wilson, Plaintiff's first line supervisor, about another co-worker who, according to Plaintiff, regularly left work before the end of the work shift. Compl. ¶ 25. Plaintiff alleges that, about six months later, on October 15, 2004, he was assigned "an inordinate amount of work" to compensate for another idle coworker. *Id.* Plaintiff alleges that this extra work aggravated his pre-existing shoulder injury. *Id.* ¶ 27. When he requested to leave early due to his shoulder condition, Mr. Wilson denied his request. *Id.* Despite being denied permission to do so, Plaintiff left work early on that day, and was suspended for five days as a result. *Id.* ¶ 28. He served this suspension between October 20 and October 24, 2004.

After he left work early on October 15, 2004, but before his suspension was effective on October 20, Plaintiff was placed on medical leave. *Id.* ¶ 29. As a condition of returning to work,

Plaintiff was required to undergo a medical and psychiatric evaluation by Dr. Restak. *Id.* ¶¶ 29-30. Upon completion of this evaluation, Dr. Restak recommended that Plaintiff be required to enroll in anger management classes before being allowed to return to work. Compl., Ex. 11 (November 10, 2004 Letter to A. Griffin from Dr. Restak).

On November 19, 2004, the parties met to discuss the conditions of Plaintiff's return to work. *Id.* ¶ 33. Plaintiff was scheduled to work a shift beginning at 2:30 p.m. on that day. Compl., Ex. 8 (December 22, 2004 Letter to J. Carter from M. Ford). Despite attending the meeting with Post management, Plaintiff did not report to work for his shift that afternoon, and did not provide The Post with advance notice that he would not be doing so. *Id.* Instead, he visited Dr. Sharon Schieth regarding his shoulder and neck injury; Dr. Schieth recommended that Plaintiff remain on medical leave until January 2005. Compl. ¶ 33. The Post requested that Plaintiff provide it a release so that it could verify the need for this lengthy leave; however, Plaintiff never provided such a release. Compl., Ex. 10 (January 26, 2005 Letter to J. Carter from M. Ford).

E.     **Plaintiff's Attendance Problems and Termination**

On December 9, 2004, Plaintiff requested a copy of Dr. Restak's evaluation. Compl. ¶ 36. The Post agreed to allow him to review a copy at its office, but Plaintiff never came in to do so. Compl. Ex. 8 (December 22, 2004 Letter to J. Carter from M. Ford). On December 22, 2004, The Post advised Plaintiff that he would be suspended for ten days upon his return to work due to his failure to report for his scheduled shift on November 19, 2004. *Id.* The letter reiterated that, as the parties discussed on November 19, Plaintiff had to fulfill the following conditions before returning to work: (1) enroll in an anger management program and sign a release so that Ann Griffin, the supervising nurse at The Post's health care center, could receive updates regarding Plaintiff's progress; (2) schedule counseling sessions through the Employee

Assistance Program ("EAP") and sign a release enabling Ms. Griffin to confirm that Plaintiff was attending the sessions; and (3) conform his behavior to The Post's behavior and attendance standards. *Id.* ¶ 36; *see also* Compl., Ex. 8 (December 22, 2004 Letter to J. Carter from M. Ford).

Plaintiff contested the reasons for this suspension in writing on December 28, 2004. *Id.* ¶ 37; *see also* Compl., Ex. 9 (December 28, 2004 Letter to M. Ford from J. Carter). He was scheduled to return to work at The Post on January 22, 2005; however, on that date he provided another note from his doctor indicating that he could not work for another week for "confidential" reasons. Compl., Ex. 10 (January 26, 2005 Letter to J. Carter from M. Ford). On January 25, 2005, Pressroom Superintendent Melinda Ford telephoned Plaintiff and asked him to provide a release to The Post so that it could verify the medical reasons for his absence. *Id.* Plaintiff refused to do so, and instead angrily hung up the telephone during the conversation. *Id.* Consequently, on January 26, 2005, Plaintiff's employment with The Post was terminated "for a continued pattern of insubordinate conduct, for continued violation of [The Post's] attendance policies, and for failing to cooperate in [The Post's] investigation into [Plaintiff's] absences." *Id.*; Compl. ¶ 39.

### F.    <u>Plaintiff's EEOC Charge</u>

Plaintiff filed a charge of discrimination with the EEOC on May 18, 2005. The charge alleges that on January 25, 2005, he was called at his home by a Post employee and asked to sign a release for medical information. *See* Exhibit 1, EEOC Charge of Discrimination dated May 18, 2005.[3] Plaintiff claims that he refused to sign such a release absent compliance with The Post's

---

[3] Although it was not attached to his complaint, the Court may refer to Plaintiff's Charge of Discrimination in ruling on a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6) because it is referenced in paragraph 12 of the complaint. *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624-25 (in ruling on a Rule 12(b)(6) motion for dismissal, the court may consider documents "attached to or incorporated in the complaint . . . ."); *Darby v. S.B. Ballard Constr. Co.*, No. Civ.A. 05-199, 2005 WL 2077299, at *1 & n.1 (M.D. Fla. Aug. 26, 2005) (court could

procedures, and was terminated the following day. *Id.* Plaintiff's charge asserts that these facts show that he was terminated because of his "disability in violation of the Americans with Disabilities Act of 1990, as amended." *Id.*

Plaintiff alleges that he received his right to sue letter from the EEOC on May 27, 2005 -- nine days after he filed his charge. He filed his complaint 91 days later, on August 26, 2005. The Post was served with the complaint on September 2, 2005. This Motion followed.

**ARGUMENT**

The allegations of Plaintiff's complaint clearly reveal that dismissal is appropriate pursuant to Federal Rules of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted, and 12(b)(1), for lack of subject matter jurisdiction. Plaintiff's complaint fails to state a claim under either the Fifth Amendment, Title VII or the ADA. Furthermore, Plaintiff's complaint far exceeds the scope of his EEOC charge, and this Court therefore lacks subject matter jurisdiction over his Title VII and ADA claims. Finally, Plaintiff's own allegations reveal that he has not timely filed his Title VII and ADA claims. Plaintiff's complaint therefore should be dismissed in its entirety.

## I.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Dismissal under Rule 12(b)(6) is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When reviewing such a motion, the court may consider "the facts alleged in the complaint, any documents . . . attached to or incorporated in the complaint and matters of which . . . judicial notice [may be taken]." *St. Francis Xavier*

---

(continued...)

consider plaintiff's EEOC Charge since it was referenced in the complaint without converting motion to dismiss into one for summary judgment).

*Parochial Sch.*, 1 17 F.3d at 624-25 (footnote and citation omitted). Furthermore, "the court need not accept inferences drawn by plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citation omitted). Although a plaintiff is not required to "'plead law or match facts to every element of a legal theory'" in his complaint, *Brooks-Miller v. England*, 357 F. Supp. 2d 197, 201 n.2 (D.D.C. 2004) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)), "[c]ourts are not precluded from examining the plaintiff's *prima facie* case [at] the dismissal stage because it allows the Court to determine whether the plaintiff will ever meet his initial burden[.]" *Brooks-Miller*, 357 F. Supp. 2d at 201 n.2 (citing *Rochon v. Ashcroft*, 319 F. Supp. 2d 23, 29 (D.D.C. 2004)).

None of the counts in Plaintiff's complaint states a claim upon which relief can be granted. *First*, Count II fails to state a viable Fifth Amendment claim because Plaintiff does not allege any governmental action; such action is necessary for a Fifth Amendment violation. *Second,* Count I fails to state a viable Title VII claim because Plaintiff fails to allege that The Post took any action against Plaintiff *because of* his race, or created a *racially* hostile work environment in which Plaintiff had to work. And, *third*, Count III fails to state an ADA claim because Plaintiff (i) fails to allege that he requested and was denied a reasonable accommodation, a prerequisite for a failure to accommodate claim; and (ii) fails to allege the existence of a disability within the meaning of the ADA. For all of these reasons, the complaint should be dismissed in its entirety.

A.    **Plaintiff's Fifth Amendment Claim Should be Dismissed Because Plaintiff Does Not Allege That There was any Governmental Action in this Case.**

In Count II, Plaintiff attempts to claim that The Post violated his due process rights under the Fifth Amendment by requiring him to undergo a physical and mental evaluation against his will and subsequently denying him a copy of his psychiatric evaluation. Compl. ¶¶ 49-50. That Count should be summarily dismissed. The Fifth Amendment "concededly appl[ies] to and restrict[s] only the Federal Government and not private persons." *Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461-62 (1952). Therefore, the "fundamental inquiry" in assessing the viability of Plaintiff's claim must be whether The Post "is a governmental actor to whom the prohibitions of the Constitution apply." *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 542 (1987).

The Post is not a governmental actor. Indeed, Plaintiff himself correctly alleges that The Post "is a 'private employer' as defined in Title VII and the Americans with Disabilities Act of 1990." Compl. ¶ 4. This concession is fatal to any claim that The Post violated Plaintiff's constitutional rights, and this count of his complaint should therefore be dismissed with prejudice. *See, e.g., Anderson v. USAir, Inc.*, 818 F.2d 49, 56 (D.C. Cir. 1987) (affirming grant of summary judgment to employer on Fifth Amendment claim against airline because "USAir, a private corporation, is a not a state actor") (citation omitted); *Brown v. D.C. Transit Sys., Inc.*, 523 F.2d 725, 729 (D.C. Cir. 1975) (reversing district court's judgment and granting summary judgment in favor of employer on plaintiffs' claims that employer's hair grooming regulation violated the Fifth Amendment because there was no state action); *Rodriguez v. Beechmont Bus Serv., Inc.*, 173 F. Supp. 2d 139, 151-52 (S.D.N.Y. 2001) (dismissing plaintiff's Fifth Amendment claims against his prior employer based on alleged discrimination because there was no allegation that the defendants were state actors).

**B.**     **Plaintiff Has Failed to State a Claim Under Title VII.**

In Count I of his complaint, Plaintiff alleges that The Post violated Title VII by creating a hostile work environment and improperly retaliating against him. However, the complaint's factual allegations are insufficient to state either claim.

**1.**     **Plaintiff Fails to State a Hostile Work Environment Claim Under Title VII.**

To state a claim for an unlawfully hostile work environment under Title VII, a plaintiff must allege facts that, if proven, would establish discriminatory conduct "so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin[, and thus] offends Title VII's broad rule of workplace equality." *O'Neal v. England*, No. Civ. A. 02-0172, 2003 WL 21788957, at *2 (D.D.C. Feb. 25, 2003) (citation and internal quotation marks omitted). An allegedly hostile work environment is thus actionable under Title VII only if the harassment "is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (internal quotation marks omitted). The standard is an objective one: "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Allegations of a single workplace confrontation – even one involving racially offensive language – have been held to be insufficient to plead a hostile work environment claim. *O'Neal*, 2003 WL 21788957, at *2.

Specifically, in *O'Neal*, the plaintiff alleged that "he heard from a co-worker that a different co-worker used a racial slur when referring to plaintiff." *Id.* The Court dismissed the complaint, holding that because plaintiff "allege[d] only one incident in which a co-worker referred to him using a racial slur, plaintiff's allegations [did] not rise to the level of severe and

pervasive discriminatory conduct and Count 2 [did] not state a separate claim for which relief can be granted." *Id.* (footnote omitted); *see also Brooks-Miller*, 357 F. Supp. 2d at 201 (dismissing plaintiff's hostile work environment claim pursuant to Rule 12(b)(6) because the plaintiff "fail[ed] to allege how . . . [the] conduct [at issue] constitute[d] 'severe and pervasive' behavior," and failed to indicate "why she believes the alleged harassment occurred on account of her race, and how the harassment affected a term, condition, or privilege of her employment").

Plaintiff's allegations here are even less supportive of a hostile work environment claim than those present in *O'Neal* and *Brooks-Miller*, where the courts granted the defendants' motions to dismiss. Specifically, Plaintiff alleges that (i) he had a single confrontation with his supervisor in 2000 (Compl. ¶¶ 21-22); (ii) four years later, he was allegedly assigned "an inordinate amount of work" (Compl. ¶ 25); and (iii) he was required to undergo a medical evaluation, and was not given a copy of this evaluation, (Compl. ¶ 40). Elsewhere in his complaint, Plaintiff also pleads that he is "protected" by Title VII because of his race, African American. Compl. ¶ 3.

Even if Plaintiff's account of these incidents is accurate, and his challenge to them is not time-barred,[4] a few isolated events scattered over four years -- none of which are alleged to have involved race or racially hostile comments -- are plainly insufficient to state a claim for a racially hostile work environment. Indeed, Plaintiff does not allege that *any* of these instances occurred because of his race. He does not allege that the supervisor in question used any racially inappropriate language, or in any way targeted Plaintiff because of his race. Nor does he allege

---

[4] Title VII requires a plaintiff to file an administrative charge challenging alleged discrimination within 300 days after the discriminatory conduct is alleged to have occurred. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). Because he did not file his charge until May 2005, it is clear that any claim based upon the October 2000 incident with Mr. Mornot is time-barred. *See Coleman v. Potomac Elec. Power Co.*, 310 F. Supp. 2d 154, 160 (D.D.C. 2004) (dismissing all "Title VII claims arising from acts that occurred more than 300-days prior to [plaintiff's] July 16, 2002 [EEOC Charge].").

that he was assigned additional work, or required to undergo a medical evaluation, because of his race. Simply put, there is *nothing* in Plaintiff's complaint suggesting in any way that Plaintiff's race played any role whatsoever in The Post's termination of his employment or the alleged hostile work environment he suffered. He certainly has not alleged that The Post engaged in conduct "so severe or pervasive that it created a work environment abusive to employees because of their race . . . ," which is what Title VII requires. *O'Neal*, 2003 WL 21788957, at *2. Plaintiff's hostile work environment claim must be dismissed.

### 2. Plaintiff Has Failed to Allege That He Engaged in Protected Activity Sufficient to Support A Title VII Retaliation Claim.

To state a claim for retaliation, Plaintiff must allege: (1) that he engaged in statutorily protected activity; (2) that his employer took an adverse personnel action against him; and (3) that a causal connection existed between the two. *See Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001), *cert. denied,* 536 U.S. 958 (2002). Of particular relevance here, "[t]o prevail on a motion to dismiss, a plaintiff must allege that he engaged in a 'protected activity.' Protected activity includes participation in any investigation, proceeding or hearing under Title VII as well as any opposition to any practice made unlawful by Title VII." *Rodriguez*, 173 F. Supp. 2d at 149 (citations omitted). Plaintiff has not made these necessary allegations here.

None of the activity in which Plaintiff alleges to have engaged is protected by Title VII. While Plaintiff claims that he complained to The Post about various matters on a number of occasions over his many years of employment, none of these complaints was protected by Title VII. They included allegations that Post managers treated him poorly, and with disrespect; that he was assigned too much work; that other co-workers did not perform their jobs adequately; and that he was improperly required to submit to a medical evaluation prior to returning to work after being suspended for insubordination and excessive absences. *See* Compl. ¶¶ 21-56. However,

not once does Plaintiff allege that he complained about activity protected or prohibited by Title VII. Not a single one of Plaintiff's numerous written complaints to The Post (Compl., Exs. 3 & 9) even mention race (or any other protected classification), much less complain that the conduct occurred because of any protected classification. Under the circumstances, these activities simply do not state a valid Title VII retaliation claim. *See Broderick v. Donaldson*, 338 F. Supp. 2d 30, 40-41 (D.D.C. 2004) (holding that plaintiff's memoranda to her supervisors complaining about alleged accusations made against her by her supervisors and complaining that she had not been promoted did not constitute statutorily protected activity where they did not make any reference to discrimination or retaliation of any kind and did not indicate that her Title VII lawsuit was the motivation for the alleged discrimination against her); *Rasekh v. Veneman*, 357 F. Supp. 2d 70, 76 (D.D.C. 2004) (holding that plaintiff's confrontations with a supervisor and his membership in a group formed to address and rectify "glass ceiling problems facing Asians . . . ," did not constitute protected activity. "Confrontations with an administrator . . . do not constitute protected activities as required by Title VII." ); *Evans v. Golub Corp.*, No. Civ.A. 96-3889, 1997 WL 349952, at *2 (S.D.N.Y. June 24, 1997) (dismissing plaintiff's Title VII retaliation claim where plaintiff "failed to allege that adverse action was taken by [his employer] in retaliation for anything that he did to oppose a purported unlawful employment practice").

C.    **Plaintiff Does Not Adequately Allege a Claim Under the ADA.**

Plaintiff's claim that The Post discriminated against him in violation of the ADA suffers from two independent, fatal problems. First, his alleged disability ("a chronic right shoulder strain and carpel [sic] tunnel syndrome" - Compl. ¶ 52) is not cognizable under the ADA. Second, Plaintiff does not allege that he *ever requested and was denied* a reasonable accommodation, a necessary prerequisite for a failure to accommodate claim. For these reasons, Plaintiff has failed to state a claim for relief under the ADA.

### 1. **Plaintiff's Alleged Disability is not Cognizable Under the ADA.**

Plaintiff's complaint alleges that he suffers from "a chronic right shoulder strain and carpel [sic] tunnel syndrome" which "prevent him from lugging heavy crates of paper waste in the pressroom." Compl. ¶ 52. Plaintiff's own allegations demonstrate that he does not suffer from a disability covered by the ADA.

The ADA protects disabled persons with a covered disability from discrimination. 42 U.S.C. § 12112(a). The Act defines a "disability" as having one or more of the following characteristics:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). To qualify as disabled under subsection (A), plaintiff must show that he has a physical or mental impairment that "substantially limits" a major life activity. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 194-95 (2002) (citing 42 U.S.C. § 12102(2)(A)). To be "substantially limited" in a category of tasks, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota*, 534 U.S. at 198. As the Supreme Court held, the issue is "not whether the claimant is unable to perform the tasks associated with [his] specific job." *Id.* at 200-01.

For this reason, an alleged inability to perform a specific job, or a specific task required by a specific job, is insufficient to establish that an individual is "disabled" within the meaning of the ADA. *See Moreno v. Brownlee*, 85 Fed. Appx. 23, 27 (5th Cir. 2004) (employee's carpal tunnel syndrome did not qualify as a disability under the ADA because the employee's condition "simply precluded him from performing [a] particular job . . . [which] is not enough to constitute

a substantial limitation on the major life activity of working"), *cert. denied* 541 U.S. 1053 (2004)

(citations omitted); *Cutler v. Hamden Bd. of Educ.*, 150 F. Supp. 2d 356, 360 (D. Conn. 2001)

("As [a] substantial body of case law . . . demonstrates, disabilities such as the plaintiff's do not

generally constitute a disability within the meaning of the ADA since the inability to perform a

single job or a particular job function is not sufficient to constitute a substantial limitation on the

major life activity of working.") (citation omitted); *see also Duncan v. Washington Metro. Area*

*Transit Auth.*, 240 F.3d 1110, 1113 (D.C. Cir. 2001) (*en banc*) (vacating judgment in favor of

plaintiff on his ADA claim because plaintiff, who had a "degenerative disc disease" that limited

his ability to lift more than twenty pounds, failed to show that "his back impairment substantially

limit[ed] his ability to work," and thus failed to establish that "he was 'disabled' under the

ADA"), *cert. denied,* 534 U.S. 818 (2001).

Here, Plaintiff alleges only what the courts have clearly held is insufficient:  the only

limitation allegedly caused by Plaintiff's "disability" is his inability to "lug[] heavy crates of

paper waste in the pressroom." Compl. ¶ 52.  Clearly, the ability to carry heavy crates of paper

in the pressroom at most limits Plaintiff's ability to perform one of the tasks required of a general

pressroom worker.  It in no way substantially limits Plaintiff's ability to "perform the variety of

tasks central to most people's daily lives." *Toyota*, 534 U.S. at 200.  Thus, dismissal of

Plaintiff's ADA claim is justified on this basis.

### 2.  Plaintiff Fails to Allege that he Requested and Was Denied a Reasonable Accommodation.

Plaintiff has also failed to allege facts that, if proven, would establish a failure to

accommodate claim under the ADA.  "To establish a *prima facie* case for failure to

accommodate under the ADA, [plaintiff] must show:  '(1) that [he] was an individual who had a

disability within the meaning of the statute; (2) that the employer had notice of [his] disability;

(3) that with reasonable accommodation [he] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations.'" *Bugg-Barber v. Randstad US, L.P.*, 271 F. Supp. 2d 120, 127 (D.D.C. 2003) (Collyer, J.) (citations omitted). While the ADA requires an employer to "'make reasonable accommodations to the known physical or mental limitations' of an employee[,]" this requirement presupposes that the employee has actually requested, and been denied, a reasonable accommodation. *Id.* at 130 (*quoting* 42 U.S.C. § 12112(b)(5)(A)). "'If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one.'" *Id.* (citations omitted).

In this case, Plaintiff does not allege that he requested, much less that he was denied, a reasonable accommodation. As stated above, "courts are not precluded from considering the plaintiff's *prima facie* case at the dismissal stage[,]" and dismissal is warranted where "it is clear that the plaintiff has failed to allege sufficient facts in [his] complaint to sustain [his] claim even at that stage." *Brooks-Miller*, 357 F. Supp. 2d at 202 (citation omitted). Because he fails to allege that he ever requested any reasonable accommodation, Plaintiff has failed to allege a failure to accommodate claim under the ADA. Count III of his complaint should therefore be dismissed on this basis as well.

## II.     PLAINTIFF'S TITLE VII AND ADA CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

A discrimination plaintiff is required to exhaust his administrative remedies by filing a charge encompassing his claim prior to filing suit in court. Federal Rule of Civil Procedure 12(b)(1) "is appropriate for resolving cases in which the plaintiff has failed to exhaust administrative remedies." *Jeffers v. Chao*, No. Civ.A. 03-1762, 2004 WL 3257069, at *3 (D.D.C. Sept. 21, 2004) (Collyer, J.) (citation omitted), *reconsideration denied*, No. Civ.A. 03-1762, 2005 WL 1432374 (D.D.C. June 14, 2005). It "presents a threshold challenge to the

court's jurisdiction," *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987), and requires

dismissal of any action over which the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P.

12(b)(1). Under Rule 12(b)(1), "the plaintiff bears the burden of proving by a preponderance of

the evidence that a court has subject matter jurisdiction to hear a case." *Wilbur v. C.I.A.*, 273 F.

Supp. 2d 119, 122 (D.D.C. 2003) (citation omitted), *aff'd,* 335 F.3d 675 (D.C. Cir. 2004). In

reviewing a motion to dismiss pursuant to Rule 12(b)(1), the "court must accept as true all of the

factual allegations set forth in the complaint; however, such allegations 'will bear closer scrutiny

in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'"

273 F. Supp. 2d at 122 (citations omitted).

Neither of the claims presented in Counts I or Count III of Plaintiff's complaint were

contained in Plaintiff's EEOC charge. Therefore, these claims should also be dismissed because

Plaintiff has failed to exhaust his administrative remedies.

A.     **Plaintiff's EEOC Charge Does Not Encompass Any Claims Under Title VII for a Hostile Work Environment or Retaliation.**

"Title VII requires that a person complaining of a violation file an administrative charge

with the EEOC and allow the agency time to act on the charge." *Park v. Howard Univ.*, 71 F.3d

904, 907 (D.C. Cir. 1995). Any lawsuit following the filing of an EEOC charge "is limited in

scope to claims that are 'like or reasonably related to the allegations of the charge and growing

out of such allegations.'" *Id.* (citation omitted).

Plaintiff's EEOC charge could not be any clearer -- he claims that The Post discriminated

against him on the basis of his alleged disability by requesting that he provide a release of

medical information, allegedly in contradiction of The Post's policies:

> In November 2004, I presented a doctor's notice letting my
> employer know that I needed to leave for my disability and
> requested leave from November 22, 2004 through January 22,
> 2005. On January 25, 2005, the pressroom Superintendent called

> me at home to request a release for sensitive medical information.
> During this conversation, I let her know that I could not provide
> this release outright and that other procedures needed to be
> followed per the Washington Post's own policy. On January 26,
> 2005, I was terminated.
>
> I believe I was terminated because of *my disability in violation of*
> *the Americans with Disabilities Act of 1990, as amended.*

Exhibit 1, Charge of Discrimination filed May 18, 2005 (emphasis added).

The charge does not mention any Title VII claim at all, much less the specific hostile

work environment and retaliation claims that Plaintiff alleges in his complaint. Indeed, the

charge does not mention any alleged discrimination on the basis of Plaintiff's race. Plaintiff did

not even check the boxes on his EEOC charge for "Retaliation" or "Race" discrimination; the

only box he checked was "Disability." *See* Exhibit 1 (EEOC Charge). Plaintiff's sole basis for

his charge was his alleged disability, and therefore he did not exhaust his administrative

remedies as Title VII requires. *See, e.g., Park*, 71 F.3d at 908 (holding that plaintiff failed to

exhaust her administrative remedies as to her hostile work environment claim where her EEOC

charge lacked the words "hostile work environment," as well as "any factual allegations

supporting such a claim."); *Brown v. District of Columbia*, 251 F. Supp. 2d 152, 162 (D.D.C.

2003) (holding that plaintiff failed to exhaust her administrative remedies regarding her gender

discrimination and retaliation claims where, in her "EEOC complaint, plaintiff checked only the

boxes for allegations of discrimination based on race and disability, and did not check the boxes

for gender discrimination or retaliation. Furthermore, all the allegations contained in the

[EEOC] complaint relate specifically to race and disability discrimination, and there is absolutely

no indication that plaintiff was alleging gender discrimination or retaliation."); *Hunt v. D.C.*

*Dep't of Corrections*, 41 F. Supp. 2d 31, 36 (D.D.C. 1999) (holding that plaintiff failed to

exhaust her administrative remedies regarding her gender discrimination claim where, in her

EEOC charge, plaintiff "specifically checked the boxes for age discrimination and retaliation, but she did not check the box for gender discrimination. Nor is there anything within the EEOC claim form that indicates [plaintiff] was alleging gender discrimination: All of her allegations relate quite specifically to age discrimination and retaliation . . . ."); *Sisay v. Greyhound Lines, Inc.*, 34 F. Supp. 2d 59, 64 (D.D.C. 1998) (holding that plaintiff failed to exhaust his claim of discrimination based on his national origin where he "alleged only race discrimination and retaliation in his EEOC charge. Absent from that complaint is any indication of a claim of national origin discrimination either in the form of express words or factual allegations that would support such a claim."). His Title VII claim should therefore be dismissed.

### B. Plaintiff's Administrative Charge Failed to Assert the Disability Discrimination and Failure to Accommodate Claims that He Asserts in His Complaint.

"Before bringing suit in federal court, ADA plaintiffs, like those under Title VII, must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it." *Marshall v. Federal Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (*citing* 42 U.S.C. § 12117(a); *Park*, 71 F.3d at 907-09). As with Title VII charges, plaintiffs must describe their allegations with specificity; "[a] vague or circumscribed EEOC charge will not satisfy the exhaustion requirement for claims it does not fairly embrace." *Id.* While "every detail of the eventual complaint need not be presaged in the EEOC filing, . . . the substance of an ADA claim . . . must fall within the scope of 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Id.* (*quoting Park*, 71 F.3d at 907) (citation and internal punctuation omitted).

In *Marshall*, the plaintiff alleged she was the victim of discrimination based on her alleged disability. *Id.* at 1097. Her EEOC charge alleged only that she had been denied the opportunity to apply for the position of "Operations Agent" because of her disability. *Id.* at

1096. However, in her complaint, Plaintiff also alleged that she was terminated because of her

disability. The court of appeals held that the plaintiff's EEOC charge did not fairly encompass

this claim:

> The charge filed by Marshall with the EEOC made no mention of
> her termination. The Commission could not reasonably be
> expected to investigate Marshall's firing based on the allegations
> in the charge, which spoke only of Federal Express's failure to
> allow her to apply for the Operations Agent job.

*Id.* at 1098. Similarly, the court of appeals held that the plaintiff's failure to accommodate claim

was not properly before the court:

> Marshall also contends that Federal Express discriminated against
> her by failing to reasonably accommodate her disability. . . .
> Marshall runs directly into the problem that thwarted her wrongful
> termination claim: her administrative charge makes no mention of
> any refusal to accommodate her lifting limitations or even of her
> termination (investigation of which might have led back to such a
> refusal). Thus the EEOC was not on notice to investigate the
> lifting issue, and Marshall is barred from raising it for the first time
> in her complaint.

*Id.* Because her administrative charge did not encompass her claims before the court, the court

of appeals affirmed the district court's grant of summary judgment to the employer based on the

plaintiff's failure to exhaust her administrative remedies. *Id.*

The basis of Plaintiff's administrative charge is that he was asked to, and declined, to

sign a medical release, and was terminated as a result. Exhibit 1. Although the charge generally

alleges that Plaintiff was terminated because of his disability, the charge does not allege that The

Post terminated Plaintiff because of any specific disability, but rather simply alleges that he was

terminated for failing to provide the requested release, allegedly in violation of the ADA. That is

very different from the claim Plaintiff brings in this lawsuit, where he alleges that he is "an

individual with a job-related impairment" (Compl. ¶ 52); and that "Defendant wrongfully

required [Plaintiff] to return to work" (Compl. ¶ 55). Indeed, Plaintiff's complaint does not

allege that he was wrongfully terminated because of his disability at all. Rather, Plaintiff alleges that he was "wrongfully terminated . . . as retaliation" for "provid[ing] written and verbal communication with Management for every incident of a hostile work place environment and retaliatory action[,]" in Count I of his complaint -- his Title VII claim. *Compare* Compl. ¶ 43 *with* Compl. ¶ 56.

Instead, the basis for Plaintiff's ADA claim, as set forth in Count III, is that The Post discriminated against him on the basis of his disability by "wrongfully fail[ing] to reasonably accommodate Plaintiff's condition to a position involving less strenuous physical labor." Compl. ¶ 56. But Plaintiff's EEOC charge does not allege that Plaintiff requested and was denied *any* accommodation for his alleged disability, which notably he does not even describe in his EEOC charge. Just like the plaintiff in *Marshall*, whose complaint was dismissed for failure to exhaust administrative remedies, Plaintiff in this case never presented any claim that he requested and was denied a reasonable accommodation.

As this Court has previously held, the mere assertion of a discriminatory termination claim in an EEOC charge does not encompass a failure to accommodate claim where such a claim is not asserted. *See Bugg-Barber*, 271 F. Supp. 2d at 132. Indeed, like the plaintiff in *Bugg-Barber*, Plaintiff here lists the earliest and latest date of the alleged discrimination as January 26, 2005 -- the date he was terminated. Plaintiff's charge does not, therefore, similar to the charge held to be deficient in *Bugg-Barber*, include the dates on which Plaintiff was allegedly denied reasonable accommodation(s). *Id.* Plaintiff cannot now argue that his charge was intended to address a reasonable accommodation claim, because any alleged failure to accommodate must have occurred prior to Plaintiff's termination, and the January 26, 2005 date that Plaintiff identifies as the earliest occurrence of discrimination. The only action Plaintiff

complains of in his charge was his termination. Thus, as in *Bugg-Barber*, the court should hold

that Plaintiff's "EEOC charge [does] not encompass [his] failure to accommodate claim set forth

in this lawsuit." *Id.*

Because they were not asserted in his EEOC charge, Plaintiff's ADA claims are "not

properly presented to [the] Court." *Id.* Therefore, the court should dismiss this claim for

Plaintiff's failure to exhaust his administrative remedies.

## III.   PLAINTIFF HAS ALSO FAILED TO TIMELY FILE HIS ACTION IN THIS COURT.

Even if the Court were to find that Plaintiff's Title VII and ADA claims were properly

asserted in his EEOC Charge, these claims should nonetheless be dismissed because they are

untimely. Plaintiff was required to file his Title VII and ADA claims within ninety (90) days of

his receipt of his right-to-sue notice. 42 U.S.C. § 2000e-5(f)(1) (2000); *see also Taye v.*

*Amundson*, 908 F. Supp. 21, 23 (D.D.C. 1995) ("It is a clear requirement of Title VII that a

private suit to enforce a claim arising under Title VII must be filed within 90 days of receipt of

the right-to-sue letter.") (*citing* 42 U.S.C. § 2000e-5(f)(1)); *Smith v. District of Columbia*, No.

Civ.A. 02-418, 2005 WL 488824, at *1 n.2 (D.D.C. Feb. 28, 2005) ("As with charges of

discrimination brought under Title VII, charges of discrimination brought under the ADA must

be filed within 90 days of plaintiff's receipt of a 'right to sue letter' from the agency.") (citation

omitted).

Here, Plaintiff alleges that he "*received* a Dismissal and Notice of Suit of Rights from the

EEOC on May 27, 2005." Compl. ¶ 12 (emphasis added). These allegations must be taken as

true for purposes of resolving a motion to dismiss, *Leatherman v. Tarrant County Narcotics*

*Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Coleman v. Potomac Elec. Power*

*Co.*, 310 F. Supp. 2d 154, 158 (D.D.C. 2004) (Collyer, J.), *aff'd*, Civ.A. No. 04-7043, 2004 WL

2348144 (D.C. Cir. Oct. 19, 2004), and The Post cannot know exactly how Plaintiff received the

Right to Sue letter. Therefore, Plaintiff's complaint was due to be filed within 90 days after May

27, 2005. However, he did not file his suit until August 26, 2005 – after this 90-day period had

elapsed. Plaintiff's own allegations thus reveal that he failed to file his Title VII and ADA

discrimination claims in a timely fashion, and they must therefore be dismissed. *See Coleman*,

310 F. Supp. 2d at 158 ("A charging party must file a court complaint *within 90 days of receipt*

*of the right-to-sue letter from the EEOC* or the party's right to sue will be lost.") (*citing* 42

U.S.C. § 2000e-5(f)(1)) (emphasis added); *Powell v. Washington Metro. Area Transit Auth.*, 238

F. Supp. 2d 160, 163 n.4 (D.D.C. 2002) (The "90-day period . . . begins to run . . . upon a

plaintiff's *receipt* of a right-to-sue notice . . . ."); *Smith v. Dalton*, 971 F. Supp. 1, 2 (D.D.C.

1997) (holding that plaintiff's Title VII complaint was untimely because it was filed "91 days

after he received the EEOC's final decision"); *Hunt,* 41 F. Supp. 2d at 37 (noting that plaintiff's

action was untimely because the complaint was not filed for ninety-four days after the right-to-

sue letter was issued).

## CONCLUSION

It is undeniable that Plaintiff's claims are not properly before this Court. His Fifth

Amendment claim fails to allege that The Post is a governmental actor – a necessary element of

such a claim. His Title VII claim fails to allege facts that, if proven, would establish that any of

The Post's actions were taken because of Plaintiff's race, or in retaliation for Plaintiff's decision

to engage in activity protected by Title VII. And his ADA claim fails to allege that Plaintiff

suffered from a disability within the meaning of the ADA, or that Plaintiff requested and was

denied a reasonable accommodation. In addition, neither Plaintiff's Title VII claim nor his ADA

claim were fairly encompassed by his EEOC charge, and therefore both claims must be

dismissed for this independent reason, as well. And, finally, Plaintiff's ADA and Title VII

claims are untimely, as they were brought more than 90 days after Plaintiff alleges he received

his right-to-sue letter from the EEOC.  For all of these reasons, Defendant respectfully requests

that this Court dismiss Plaintiff's complaint, in its entirety, with prejudice.  A proposed Order

accompanies this Memorandum.

Respectfully submitted,


_____/s/_____
Alison Marshall (D.C. Bar No. 426168)
Jacqueline M. Holmes (D.C. Bar No. 450357)
Michelle N. Johnson (D.C. Bar No. 491910)
JONES DAY
51 Louisiana Avenue N.W.
Washington, D.C.  20001
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

ATTORNEYS FOR DEFENDANT