IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| JEROME CARTER ) | |
| ) | Civil Case No. |
| Plaintiff. ) | |
| ) | |
| v. ) | |
| ) | |
| THE WASHINGTON POST COMPANY ) | |
| Defendant. ) | |
| ) | |

## AMENDED COMPLAINT

Plaintiff Jerome Carter, ("Carter") by and through the undersigned counsel, submits the following Complaint and states as follows:

### I. PRELIMINARY STATEMENT

1. Plaintiff brings this action against Defendant, The Washington Post Company ("Washington Post") for violations of the Family Medical Leave Act, 29 C.F.R. §825, creating and maintaining a hostile work environment and committing retaliatory actions in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and violation of his rights under the American with Disabilities Act of 1990.

2. Plaintiff Jerome Carter is an adult individual who was recently terminated from his employment with the Washington Post Newspaper.

3. Plaintiff is by race African American, color black, and thus a member of the protected class pursuant to Title VII.

4. The Defendant, the Washington Post is a "private employer" as defined in Title VII and the American with Disabilities Act of 1990.

## **JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction pursuant the FMLA, 29, C.F.R. §82542 U.S.C. § 2000e-5(f), 28 U.S.C. § 1343(a)(4), and 28 U.S.C. § 1331. The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by 42 U.S.C. § 2000e *et seq.*, which provide injunctive and other relief against, *inter alia*, discrimination and unfair treatment in employment.

6. This Court has personal jurisdiction over the Defendant, the Washington Post, as it performs business and is headquartered in Washington, D.C., specifically 1150 15th Street, N.W. Washington, D.C. 20071.

7. This Court has pendent jurisdiction as to all claims not otherwise the subject of this Court's jurisdiction, if any, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that all State claims that might arise in this case are also related to claims in this action that are within this Court's original jurisdiction as they are part of the same case or controversy under Article III of the United States Constitution.

8. There exists an actual controversy within the jurisdiction of this court within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

9. The amount in controversy exceeds $75,000 exclusive of interests and costs. There exists complete diversity of citizenship between the plaintiff and all defendants

10. Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1391(b) & (c). The Agency's headquarters is located in the District of Columbia and a substantial part of the unlawful acts described below occurred in this district.

11. As the Defendant employs more than fifteen individuals, it is subject to the laws of Title VII.

### **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

12. Plaintiff has exhausted his administrative remedies pursuant to 42 U.S.C. § 2000e – 5(f)(3). Plaintiff timely filed a discrimination, hostile work environment, and retaliatory action claim with the U.S. Equal Opportunity Commission ("EEOC") within the required 180 days from the date of the alleged violation, requesting relief and recovery for damages suffered as a result of the Defendant's acts which give rise to this suit. Plaintiff received a Dismissal and Notice of Suit Rights from the EEOC, <u>mailed</u> on May 27, 2005, but received three days after. *See* Plaintiff's Exhibit 1, Showing Notice of Suit Rights. He has retained the current undersigned counsel and filed this suit in the U.S. District Court, District of Columbia.

13. Plaintiff timely filed a claim for unemployment benefits with the Virginia Employment Commission. Although the Deputy originally found in favor of the Defendant employer (on 2/18/95), the Plaintiff successfully appealed the decision on March 3, 2005.

14. On April 15, 2005 Plaintiff and Defendant were notified that the Virginia Employment Commission had reversed the determination of the Deputy, based on their opinion that the Defendant employer had not met it's burden of showing that the claimant was discharged for insubordination. *See* Plaintiff's Exhibit 2, Showing VA's Employment Commission's Reversal.

## **BACKGROUND**

15. The Plaintiff, Jerome Carter worked for the Washington Post from June 28, 1989 to January 27, 2005 as a pressroom general worker.

16. Plaintiff's first line supervisor was Bruce Wilson, title - Pressroom General Workers Supervisor.

17. Plaintiff's second line supervisor was Bernard Monot, title - Manager for General Workers and Paper Handlers.

18. Plaintiff's third line supervisor was Melinda Ford, title - Pressroom superintendent.

19. Plaintiff's duties involved keeping the pressroom clean, keeping the presses and machinery clean, and handling the newspaper waste that improperly required moving unmechanized heavy waste carts.

## **COUNT I – TITLE VII - HOSTILE WORK PLACE ENVIRONMENT AND IMPROPER RETALIATORY/ADVERSE ACTION**

20. Paragraphs 1-19 are hereby all re-alleged and incorporated in their entirety.

21. On or about October 29, 2000, Plaintiff's then general worker manager, Bernard Monot, screamed and cursed at the Plaintiff, for going to the payroll office to get the correct time off for "compassion leave" which Plaintiff had taken due to his brother's death.

22. At the time, Mr. Mornot, who was intoxicated by alcohol and soon began pushing and shoving the Plaintiff, committing assault and battery on Plaintiff.

23. From October 2000 until March 27, 2001, Plaintiff had several meetings with Human Resources Personnel from Springfield Plant, Jan Doll, and District of Columbia Office, Martha

Lequeux, regarding an action on Plaintiff's complaint against Mr. Mornot. *See* Plaintiff's Exhibit 3 Showing Letters Dated March 28, 2001, June 7, 2001 and March 26, 2002.

24. On or about June 7, 2001, Plaintiff suffered a work place injury pushing a heavy waste cart, hurting his shoulder and neck. *See* Plaintiff's Exhibit 3 Showing Letters Dated March 28, 2001, June 7, 2001 and March 26, 2002.

25. On or about April 2004, Plaintiff complained to Mr. Mornot about Mr. Wilson and another coworker regularly leaving before the end of the shift.

26. On or about October 15, 2004, Plaintiff's then Supervisor, Mr. Wilson assigned the Plaintiff an inordinate amount of work, to cover for an idle co-worker.

26. From June 2004 through August 2004, Plaintiff met with Jenny Lequeux, Melinda Ford, and Jan Doll on several instances regarding the hostile work environment and Plaintiff's work schedule.

27. This extra-heavy workload aggravated Plaintiff's existing shoulder condition. *See* Plaintiff's Exhibit 4, Describing Shoulder Injury.

28. Plaintiff completed given assignments then asked Mr. Wilson if he could leave early because of his shoulder condition, but Mr. Wilson improperly refused, and later suspended Plaintiff for three days for leaving in a deragotory manner before the end of the shift.

29. On or about October 18, 2004, the Defendant placed Plaintiff on medical leave and required him to see their psychiatrist Dr. Restak, for a medical and psychiatric evaluation as conditions for his return to work.

30. Against his free will, Plaintiff agreed to be evaluated by Dr. Restak, and visited Dr. Restak, but an evaluation report was not issued, delaying Plaintiff's return to work for about a month.

31. During this period, Plaintiff's mother was hospitalized and was in Hospice Care in Newport News, Massachusetts, and Plaintiff. *See* Plaintiff's Exhibit 5, Showing letter from Riverside Medical Center.

32. Defendant still required Plaintiff to attend a meeting on November 18, 2004, where Defendant informed Plaintiff they did not have the evaluation from Dr. Restak yet wanted Plaintiff to return to work.

33. On same day of November 18, 2004, Plaintiff visited Dr. Sharon Schieth regarding his neck and shoulder injury, and Dr. Schieth recommended another medical leave for his injury until January 2005, which Defendant agreed and approved. *See* Plaintiff's Exhibit 6, Showing Medical Certification for Leave Time/Restricted Duty.

34. Defendant advised Plaintiff that he would not be allowed to return to work until Dr. Schieth cleared Plaintiff to return to work.

35. On or about December 9, 2004, Plaintiff requested a copy of the medical evaluation which should have been written by Dr. Restak. *See* Plaintiff's Exhibit 7, showing Plaintiff's fax/letter dated December 9, 2004 to Ms. Griffin.

36. On or about December 22, 2004, Melinda Ford responded to the Plaintiff's December 9, 2004 letter and informed Plaintiff that he had been suspended for missing one day of work (November 19, 2004) and stipulated the following conditions for Plaintiff's return:

    a. Enroll in an anger management program and complete all sessions, and Plaintiff was also required to sign a release so Ann Griffin, the Health Care

        Center Supervising Nurse, could consult with the counselor regarding his progress; and

    b.  Contact the Employment Assistance Program ("EAP") to schedule counseling sessions and sign a release for Ms. Griffin to confirm with EAP that Plaintiff was attending only sessions.

    c.  Conform his work place behavior and attendance to the General Worker Department standards. *See* Plaintiff's Exhibit 8, Showing Ms. Ford's December 22, 2004 letter to Plaintiff outlining the conditions in which he must comply with in order to return to work.

37. On or about December 28, 2004, Plaintiff responded in a letter stating that he was not informed of his suspension for November 19, 2004, and contesting his suspension since he was on medical leave.

38. On or about January 5, 2005, Ford responded in a letter stating Plaintiff had failed to meet the requirement for returning to work, even though Plaintiff had met the conditions for return. *See* Plaintiff's Exhibit 9, Showing Letter to Ford Dated December 28, 2004.

39. On or about January 26, 2005 Plaintiff was wrongfully terminated. *See* Plaintiff's Exhibit 10, Showing letter of January 26, 2005 from Ms. Ford to Plaintiff regarding his termination of employment with the Washington Post.

40. Plaintiff has repeatedly requested, both verbally and in writing, <u>a copy</u> of Dr. Restak's report from Ms. Ford and Ms. Griffin. *See* Plaintiff's Exhibit 9, Showing December 28, 2004 letter from Plaintiff to Ms. Ford, 3rd page, last paragraph; *See* Plaintiff's Exhibit 7, showing Plaintiff's fax/letter dated December 9, 2004 to Ms. Griffin.

41. Dr. Restak suggested to Plaintiff that he was working in a "hostile environment". *See* Plaintiff's Exhibit 11 Showing Letter From Dr. Restak Dated November 11, 2004.

42. Plaintiff provided written and verbal communication with Management for every incident of a hostile work place environment and retaliatory action.

43. Plaintiff additionally submitted written verification that he had complied with Ms. Ford's three "return to work" conditions. *See* Plaintiff's Exhibit 12, Showing verification and documentation that he had complied with the conditions.

44. Defendant's wrongfully terminated Plaintiff as retaliation for filing earlier complaints and his claims that he complied with conditions described in para. 43.

45. Defendant placed Plaintiff on paid medical leave after his wrongful three day suspension, and subsequently ended all pay after just two weeks, even though he was deemed to be on paid medical leave for five weeks.

46. Defendant, with threat of termination, required Plaintiff to undergo physical and mental evaluations against his will, which he was later denied the results.

47. The foregoing acts jointly and severally were committed with discriminatory *animus*, because Plaintiff, Jerome Carter, was an African American, race, and color black, and Defendant failed to remedy the hostile work environment, and instead, retaliated against Plaintiff as described in the foregoing.

46. Other white counterparts who suffered injuries were accommodated by transfers to light duty while Plaintiff, despite his condition and injuries, was denied light duty or other accomodation even after repeated requests by Plaintiff.

48. The foregoing acts jointly and severally created a hostile work place environment where Plaintiff could not perform his duties properly.

49. The foregoing acts jointly and severally constitute retaliation or adverse action against Plaintiff.

50. Defendant has violated Title VII, and will continue to violate Title VII if not enjoined.

## COUNT II - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990

51. Paragraphs 1-50 are all herein after alleged and incorporated in their entirety.

52. Plaintiff suffers from a debilitating condition known as developmental stenosis compounded by degenerative changes as manifested by bulging disks, rotating cuff, nerve impingement etc, that prevents substantial use of his right shoulder, neck, back, and entire right side of his body; thus substantially limiting one or more of his major life activities. *See* Plaintiff's Exhibit 13 and 14, Showing Diagnosis and Physical Findings.

53. Plaintiff's Doctor ordered physical therapy immediately after evaluating Plaintiff for work related injuries of June 7, 2001 and June 13, 2001, but Defendant refused to provide payment for doctor recommended treatments as well as other denials of proper workers compensation claims by Plaintiff. See Plaintiff's Exhibit 15.

54. Plaintiff provided Defendant with several treatment verifications from Plaintiff's doctor, including a November 22, 2004 OPL Referral form verification of treatment describing Plaintiff's shoulder and arm pain. *See* Plaintiff's Exhibit 13, Showing verification document of treatment.

55. This November 22, 2004 Verification of Treatment form listed Plaintiff as disabled, ill, unable to return to work, and pending an orthopedic evaluation.

56. Notwithstanding Plaintiff's confirmed disability/illness, Defendant

9

wrongfully required Plaintiff to return to work.

57. Plaintiff repeatedly requested accommodation such as lighter duty, transfer to less strenuous activity, time off for medical procedures, transfer, and request for leave under Family Medical Leave Act and Disability, all of which were denied by Defendant.

58. Notwithstanding Plaintiff's confirmed disability/ illness, Defendant wrongfully failed to reasonably accommodate Plaintiff's condition to a position involving less strenuous physical labor.

## COUNT III – VIOLATION OF FMLA

59. Paragraphs 1-58 are all herein after alleged and incorporated in their entirety.

60. On or about November 18, 2004, Plaintiff properly requested leave under Family Medical Leave Act to attend to his deathly ill mother, but Defendant wrongfully denied the request stating Plaintiff was on "paid leave" when in actuality Defendant had removed Plaintiff off "paid leave," which entitled Plaintiff to leave under FMLA.

61. On or about November 20, 2004, Plaintiff spoke to Sheryl Rucker at Human Resource – Benefits Department, requesting again, leave under the Family Medical Leave Act, for proper medical reasons which Defendant improperly denied.

62. The above FMLA violations were also part of the malicious retaliatory actions against Plaintiff.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests Judgment in favor of Plaintiff for reasons stated in paragraphs 1-62, herein realleged and incorporated in their in their entirety, and requests the following:

1. Reinstatement of his employment with the Washington Post.

2. Back pay for the 6 months since Plaintiff's wrongful termination in the amount of THIRTEEN THOUSAND DOLLARS ($13,000.00);

3. Enjoin the Agency from future Title VII violations;

4. Enjoin the Defendants from Americans with Disabilities Act violations;

5. Enjoin the Defendant's from Due Process Rights violations;

6. Reasonable accommodation for Plaintiff's disability;

7. Pursuant to the Civil Rights Act of 1991, 42 U.S.C. 1981, compensatory and punitive damages in the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00) and attorney's fees, court costs, out of pocket litigation expenses; and

8. Such other relief as the interest of justice may require.

## **JURY DEMAND**

Trial by jury is demanded on all triable issues.

**DECLARATION OF JEROME CARTER:**

Pursuant to 28 U.S.C. § 1746, I, Jerome Carter, hereby declare the following:

1. Being of legal age, I have personal knowledge of the facts stated in the above-mentioned amended complaint and know them to be true and correct to the best of my knowledge.

2. I am a resident of Maryland, residing at 12807 Redgrave Drive, Upper Marlboro, Maryland 20774.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this 7th day of November, 2005 at North, Bethesda.

_____
Jerome Carter

Respectfully Submitted,

Dated: November 2, 2005  By: _____
Francis H. Koh (DC Bar #486602)
Aimee C. Robbins
Old Georgetown Law, LLC.
11406 Old Georgetown Rd.
N. Bethesda, MD 20852
(301) 881-3600

Counsel for Plaintiff

12