# EXHIBIT 10

## The Washington Post

1150 15TH STREET, N.W.

WASHINGTON, D.C. 20071

(202) 334-6000

SPRINGFIELD PLANT

7771 WIMSATT ROAD

SPRINGFIELD, VIRGINIA 22151

WRITER'S DIRECT TELEPHONE NUMBER

January 26, 2005

### BY HAND-DELIVERY

Mr. Jerome Carter
General Worker
12807 Redgrave Drive
Upper Marlboro, MD 20774

Dear Mr. Carter:

We have reached the end of the road in our efforts to return you to work as a General Worker at The Washington Post and secure your compliance with the basic conditions of your employment. Your insubordinate refusal yesterday to cooperate in our legitimate evaluation of your extended absences from work – followed by your angry and insubordinate action in hanging up the phone on me during our conversation yesterday – makes it clear that you are unwilling to comply with our legitimate expectations and directives and that you cannot continue to work at the Post. This letter serves to notify you that your employment has been terminated, effective today, for a continued pattern of insubordinate conduct, for continued violation of our attendance policies, and for failing to cooperate in our investigation into your absences – following prior warnings and a three-day, five-day and ten-day suspension for similar infractions.

On January 25, 2005, I called you to request that you provide The Post's Health Center with a release so that the Plant Nurse could verify your latest claimed inability to work for unspecified "confidential" concerns. Based on the prior documentation that you provided, you were supposed to return to work on January 22, 2005, after a two-month absence for an "orthopedic evaluation." As you know, we had directed you orally, and in writing on January 5, 2005, to provide us with a medical release for the purpose of verifying with your doctor your claimed need to be off work for such a lengthy period of time. We instructed you to provide that release to us by 3:00 pm on January 7, 2005. You have, to date, failed to provide us with a release. Instead, last week, you presented another note from Kaiser saying that you needed to be off work for still another week – this time for "confidential" reasons. I told you yesterday that we could not accept this vague note and would consider your continued absences since January 22 as unexcused unless you provided us with a release so that the Plant Nurse could discuss your latest absences with your doctor. You angrily said that you would not release that information to the Post and hung up the phone before I could finish our conversation. Your insubordinate and angry behavior is unacceptable, as you have been repeatedly told.

Your insubordinate and angry outburst yesterday followed your failure to comply with our other requirements for your return to work, as spelled out in our December 22, 2004 and January 5, 2005 letters to you. In those letters, we explained that, in order for you to retain your employment and return to work at the Post, you were required to meet three conditions *on or before January 15, 2005* – most of which you have still failed to meet as of this date:

Mr. Jerome Carter
January 26, 2005
Page 2

♦  We required you to enroll in an anger management program, begin anger management
sessions, and sign a release so that the Health Center could consult with the counselor
regarding your progress.  While you claim to have attended one anger management session,
you have yet to provide The Post with the required release so that we can monitor your
attendance and compliance with this program.

♦  We required you to contact EAP, begin counseling sessions, and sign a release so that the
Health Center could consult with the EAP counselor regarding your progress.  To date, you
have not met all of these requirements.   In a phone conversation with Plant Nurse Ann
Griffin on January 21, during which she was attempting to verify your compliance with
EAP, you claimed that you had signed the release, but you refused to send it to her –
insubordinately telling her that she would have to get the release from EAP herself.

♦  We required you to conform your behavior and attendance to the General Worker
Department standards – basic guidelines concerning attendance, work performance, and
behavior.  Instead of conforming your behavior, you have continued to display anger and
hostility to Post management's legitimate inquiries about your absences, and you have
refused to provide The Post with the information that it needs to evaluate your latest claim
that your are unable to work.

In our recent letters to you, we made clear that successful completion of the EAP counseling and anger
management sessions were necessary for your continued employment, and that failure to enroll in and
begin these programs on or before January 15, 2005 would be considered insubordination warranting
your termination.

Mr. Carter, your continued insubordinate and angry conduct has made your continued employment at
the Post impossible.  You have repeatedly violated or ignored our legitimate policies and directives,
resulting in warnings and three prior suspensions, and you showed utter disregard for Post
management again yesterday with yet another angry outburst.  You have left us no choice but to
terminate your employment effective today.  However, we will allow you to continue with your anger
management program for a reasonable period of time at Post expense, despite your termination, in the
hope that you will be able to address these issues.

Sincerely,

Melinda Ford
Pressroom Superintendent

MF:may

cc:     Jim Coley                      Greg Estep                    Chapel Chairman
        Jenny Rymarcsuk                Trish Dunn                    GCIU Local 449
        Kevin O'Neill                 Jay B. Kennedy
        Jan Doll                       Personnel Records
        Rod Griggs



The Washington Post
SPRINGFIELD PLANT

# EXHIBIT 11

NEUROLOGY ASSOCIATES, P.C.

NEUROLOGY AND NEUROPSYCHIATRY

*Richard M. Restak, M.D.*

DIPLOMATE, AMERICAN BOARD OF PSYCHIATRY AND NEUROLOGY

All Mail and Correspondence to the D.C. Office at:
1800 R Street, N.W.
Suite C-3
Washington, D.C. 20009
(202) 462-0455

Suburban Office:
9135 Piscataway Road
Suite 330
Clinton, MD 20735
(202) 462-0455

November 10, 2004

E. Ann Griffin, R.N.
The Washington Post
7171 Wimsatt Road
Springfield, VA 22151

Dear Ms. Griffin,

In response to your November 8, 2004 letter, I do believe that it would be mandatory for Jerome Carter to enroll in an anger management course before returning to work. There is clear-cut evidence of his propensity for angry outbursts, which would benefit from such treatment.

Also, I think that drug and alcohol testing should be done randomly upon return to work. I am a firm believer in the use of this technique in order to clarify such things as personality changes as work.

I am not exactly clear what you are asking me in regard to the "return to work in an environment that he feels is hostile towards him." This would not be a contraindication to his returning to work. Unfortunately, there are many people who are in work environments that they consider hostile. This, by itself, is not sufficient to recommend that he not return to work. If you want to clarify what it is exactly that you are asking about this, I would be happy to respond to it.

I hope that these answers have been responsive to your inquiries.

Sincerely,

Richard M. Restak, M.D.

# EXHIBIT 12

# APS Healthcare, Inc.
## Employee Assistance Program (EAP)
## Participant Statement of Understanding

We are pleased that you have decided to use your Employee Assistance Program (EAP).  There are several things we want you to know before we begin discussing your reason for coming. Personal problems are sometimes very difficult to talk about.  That is why confidentiality is extremely important to us.  Your employer will not be informed about your use of this service. We need to have your written consent in order to share information about your care.  As required by law, we do not need your written consent to share information about your care in the following situations:

1. We learn about child abuse/neglect or abuse/neglect of disabled adults
2. You or someone else is at serious risk of harm
3. We are ordered by a judge to release our records
4. To law enforcement officials in an emergency situation or for national security activities as authorized by law.

This provides a safe and secure opportunity for you to discuss your concerns with us.  Your EAP professional will help you with a thorough assessment of the problem, and work with you to develop a plan of action.  Your EAP professional may assist you if the plan of action includes a referral to an outside resource.

There is no cost to you for the EAP services provided by APS Healthcare.  The Employee Assistance Program does not, however, cover the costs of services to which you may be referred. We attempt to maintain up-to-date information on your health insurance coverage so that we can refer you to providers covered by your plan.  It is your responsibility to verify that your insurance will cover the cost of therapy or other treatment.

EAP participant signature: _____    Date: _____

---

The Health Insurance Portability & Accountability Act of 1996 (HIPAA) requires that a notice of Privacy Practices be given to the client.

☐ I have reviewed the Statement of Understanding with the above client, and provided a copy of a notice of Privacy Practices.

Affiliate signature: _____    Date: _____

Notice of Privacy/Information Practices form:
☒ Given to Client    ☐ Mailed    ☐ Client directed to web site    ☐ Client refused

**White Copy for Affiliate Records – Yellow Copy for Participant Records**

APS Healthcare, Inc.



**APS**
Healthcare

**Employee Assistance Program**
**Consent to Release Information**

I, Jerome Carter _____ residing at:

12807 Redgrave Dr.
UPPER Marlboro MD. 20774

and employed by _____ hereby give my free and
informed consent for the Employee Assistance Program (EAP) to:

Please place a check next to the item(s) to be released:

☐ Confirm contact with the EAP;
☐ Confirm attendance for face-to-face evaluation with an EAP Professional
☐ Confirm compliance with treatment recommendations;

_____

to the following party:

Name(s): E. Ann Griffin

I understand that Federal law and regulations do not protect any information about
suspected child abuse or neglect from being reported under State law to appropriate state or
local authorities.

I understand that my records are protected under Federal Regulation 42 CFR,
Confidentiality of Alcohol and Drug Abuse and under the general laws of my state and
cannot be re-disclosed without written consent, except as specifically stated by law.

This authorization expires one year from today's date. I understand that I may revoke my
authorization to release information at any time in writing and such revocation will be
effective on the date of the provider's receipt of my revocation. In the event an action
already has been taken prior to said receipt of revocation, such prior actions are covered
by the pre-existing release.

_____          1,27,05
**Signature of EAP Participant**          **Date**

_____          _____
**Signature of Witness**          **Date**

APS Healthcare, Inc., P.O. Box 10517, Rockville, Maryland 20849-0517



Family
Crisis Center, Inc.
of Prince George's County

3601 Taylor Street
Brentwood, MD 20782-1322
Telephone: (301) 779-2100
Fax: (301) 779-2104
Hotline: (301) 731-1203

**FAMILY VIOLENCE INTERVENTION CLINIC**

Receipt №  22939

Date of Service 2/12/05.

Client Name   Jerome Carter

Please Check One:

☐ Men's Group
☐ Intake

☐ Women's Group
☒ NON-DV Group

☐ Individual
☐ Safe Visitation

Amount Paid By:
Cash _____
Money Order _____
Other _____
Balance Due _____

Client Signature _____

Received By _____

**Family Crisis Center, Inc.**
of Prince George's County

3601 Taylor Street
Brentwood, MD 20722-1322
Telephone: (301) 779-8100
Fax: (301) 779-2104
Hotline: (301) 731-1203

**FAMILY VIOLENCE INTERVENTION CLINIC**

Receipt N° 23015

Date of Service 2, 27, 05

*Please Check One:*

☐ Men's Group          ☐ Women's Group          ☐ Individual
☐ Intake               ☑ NON-DV Group           ☐ Safe Visitation

Client Name _Jerome Curter_

Amount Paid By:

Cash _____

Money Order _____          Client Signature _____

Other _____

Balance Due _____ (+ 135 cr.)          Received By _____

Family
Crisis Center, Inc.
of Prince George's County

3601 Taylor Street
Brentwood, MD 20722-1322
Telephone: (301) 779-8100
Fax: (301) 779-2104
Hotline: (301) 731-1203

**FAMILY VIOLENCE INTERVENTION CLINIC**

Receipt N.º  23239

Date of Service: 3/16/05

Client Name  Jerome Carter

Please Check One:

☐ Men's Group          ☐ Women's Group          ☐ Individual
☐ Intake               ☒ NON-DV Group            ☐ Safe Visitation

Amount Paid By:

Cash _____

Money Order _____

Other _____

Balance Due _____($120.00)_____

Client Signature _____

Received By _____

# Maryland Psychotherapy Services

Page

15102 Nottingham Road             4213 Hamilton Street
Upper Marlboro, MD 20772          Hyattsville, MD 20781

(301) 888-1323 ▪ Fax (301) 888-2172

To Whom It May Concern:

Jerome Carter called for an EAP appointment on 1/11/05 and I met with him on that day.

Sincerely,

*Carol A. Auletta*

Carol A. Auletta

CAROL A. AULETTA, C.S.W.

# EXHIBIT 13

Tracking # KP 962323



**KAISER PERMANENTE.**

CARTER, JERONE
SS10 - 381 - 51
02/15/1957

Patient Identification

## OPL REFERRAL FORM /
## VERIFICATION OF TREATMENT

**IS THERE EVIDENCE THAT THIS INJURY/ILLNESS IS WORK-RELATED, OR THE RESULT OF AN ACCIDENT?**     ☑Yes ☐No     Injury date _6/01_

The above named patient has: (circle all appropriate)     treatment date(s) _9/17/03_

    1. received medical treatment     advice date(s) _____

    2. received medical advice

Physical Findings/Diagnosis ___Neck /arm /back pain___

Disability/Illness _____ Disability/Illness date from _____ to _____

The patient:

☐ Has been ill and unable to work from _____ to _____

☐ May resume regular work on _____

☑ May resume restricted work as follows _No exessive push/pulling, reaching, climbing or lifting > 10 lb_

    from (date) _____ until approximately _____

☐ Will need a follow-up appointment on or about _____

☐ Is able to participate in competitive sports.

☐ May return to school on _____

☐ Should be excused from Physical Education until _____

☐ Special _____ medication and should receive _____ dose(s).

☐ Advice protocol _____ days. Possible reaction _____

Signature and printed name _S. Sheth_     Provider # _8043_     Date _9/17/03_

I HEREBY CERTIFY THAT I HAVE REVIEWED, UNDERSTAND AND AGREE TO THE INFORMATION ABOVE, AND I AUTHORIZE THE RELEASE OF THIS INFORMATION TO MY EMPLOYER OR ANY OTHER PERSON OR ENTITY THAT MAY BE RESPONSIBLE FOR PAYMENT OF SERVICES RENDERED.

X _____

Signature (patient)     Date

00223144 (05/01)

**MEMBER**

Tracking # KP 1157159

**KAISER PERMANENTE.**

App. Date,
12. 23. 04 —
12. 28. 04 —
1. 10. 05

551038151
CARTER, JEROME M
M    L
02/15/1997

Patient Identification 112204

## OPL REFERRAL FORM /
## VERIFICATION OF TREATMENT

IS THERE EVIDENCE THAT THIS INJURY/ILLNESS IS WORK-RELATED,
OR THE RESULT OF AN ACCIDENT?    ☑ Yes  ☐ No    Injury date 6/01

The above named patient has: (circle all appropriate)

1. received medical treatment                    treatment date(s) _____

2. received medical advice                        advice date(s) _____

Physical Findings/Diagnosis  Neck/ ® sh./arm pain

Disability/Illness  Unable to work    Disability/Illness date from 11/22/04 to 1/22/05
pending orthopedic eval

The patient:

☑ Has been ill and unable to work from _See above_.

☐ May resume regular work on _____

☐ May resume restricted work as follows _____

from (date) _____ until approximately _____

☐ Will need a follow-up appointment on or about _____

☐ Is able to participate in competitive sports.

☐ May return to school on _____

☐ Should be excused from Physical Education until _____

☐ Is on _____ medication and should receive _____ dose(s).

At _____ and _____ for ____ days. Possible reaction _____

Special instructions _____

☐ Advice protocol _____

N. Sheth                    8043              11/22/04

Signature and printed name                Provider #            Date

I HEREBY CERTIFY THAT I HAVE REVIEWED, UNDERSTAND AND AGREE TO THE INFORMATION ABOVE, A
I AUTHORIZE THE RELEASE OF THIS INFORMATION TO MY EMPLOYER OR ANY OTHER PERSON OR ENTITY TH
MAY BE RESPONSIBLE FOR PAYMENT OF SERVICES RENDERED.

11, 22 -04

Tracking # KP 931128



**KAISER PERMANENTE**

*Carter, Jerome*
*5510 3815/*

Patient Identification

## OPL REFERRAL FORM / VERIFICATION OF TREATMENT

**IS THERE EVIDENCE THAT THIS INJURY/ILLNESS IS WORK-RELATED, OR THE RESULT OF AN ACCIDENT?**   ☐ Yes ☐ No   **Injury date** _____

The above named patient has: (circle all appropriate)

   (1.) received medical treatment     **treatment date(s)** *10/15/03*

   2. received medical advice     **advice date(s)** _____

**Physical Findings/Diagnosis** *Rlo Carpel Tunsel Symelone (R) Neck Muede Strein*

**Disability/Illness** _____ **Disability/Illness date from** _____ to _____

**The patient:**

☑ Has been ill and unable to work from *10/15/03* to *10/17/03*

☑ May resume regular work on *10/20/03*

☐ May resume restricted work as follows _____

   from (date) _____ until approximately _____

☐ Will need a follow-up appointment on or about _____

☐ Is able to participate in competitive sports.

☐ May return to school on _____

☐ Should be excused from Physical Education until _____

☐ Is on _____ medication and should receive _____ dose(s).

   At _____ and _____ for _____ days. Possible reaction _____

   Special instructions _____

☐ Advice protocol _____

*Dr. S Girth/Soan Redding*     *8043*     *10/17/03*
**Signature and printed name**     **Provider #**     **Date**

I HEREBY CERTIFY THAT I HAVE REVIEWED, UNDERSTAND AND AGREE TO THE INFORMATION ABOVE, AND I AUTHORIZE THE RELEASE OF THIS INFORMATION TO MY EMPLOYER OR ANY OTHER PERSON OR ENTITY THAT MAY BE RESPONSIBLE FOR PAYMENT OF SERVICES RENDERED.

_____     *10. 17. 03*
**Signature (patient)**     **Date**

00223144 (05/01)

# EXHIBIT 14

January 24, 2003

Vocational Assessment
Services, Inc.

**FAX To:**    David Johnson, MD
**FROM:**      Eleanor Landolt, RN, CCM
               Rehabilitation Nurse
               telephone: 301-774-2669
               facsimile: 301-774-4261

**RE:**        Jerome Carter

Dear Dr. Johnson:

As you know, I am Mr. Carter's rehabilitation nurse.

I have recently been notified by Gallagher Bassett Services that you have recommended surgery for Mr. Carter. Prior to approval for the surgery, the insurance carrier has requested additional information regarding the surgery recommended. Will you kindly address the following concerns:

**1.** The MRI of December, 2002, revealed "AC joint degenerative changes; early predisposition to impingement". Please advise whether the surgery you are recommending for Mr. Carter is due to pre-existing degenerative changes or to the work related event? *I agree with history*

**2.** What is the surgical procedure you are recommending? *Arthroscopic debrid. ment Rt shoulder*

**3.** What is the anticipated recuperation period for this procedure? *6 week*

**4.** Do you anticipate Mr. Carter will be capable of a full duty return to work as a general worker for The Washington Post following surgery? *Yes*

**5.** You had previously indicated that no surgery was recommended for Mr. Carter. Please advise what has changed in Mr. Carter's condition that requires a surgical procedure at this time: *Symptom have progressed*

         ✗ Physician's signature and date: _____

Dr. Johnson, will you kindly FAX this completed form to me at 301-774-4261 once completed. I thank you for your kind attention to this request.

Sincerely yours,

Eleanor Landolt

*6900 Central Park Avenue, Suite 440, Washington, DC 20005*

## DRS. COLLINS, JOHNSON, TOZZI & STARR, P.C.

ROBERT E. COLLINS, M.D.   DAVID C. JOHNSON, M.D.
JAMES E. TOZZI, M.D.   JOHN K. STARR, M.D.

PHYSICIANS OFFICE BUILDING
106 IRVING STREET, N.W. #715
WASHINGTON, D.C. 20010
(202) 291-9264
FAX (202) 291-7688

6196 OXON HILL ROAD #443
OXON HILL, MARYLAND 20745
(202) 291 3058

FOXHALL SQUARE BUILDING
3301 NEW MEXICO AVE., N.W. #218
WASHINGTON, D.C. 20016
(202) 966-2236
FAX (202) 966-0369

PRACTICE LIMITED TO ORTHOPAEDIC SURGERY

_Jerome W. Carter_
COMPENSATION
Re: Gallaher Bassett
CL#: 011418-011180-WC 09
SSN: 126 50 6392

CG-19017

1-16-03 cont'd

**X-RAY:** MRI scan of the right shoulder, obtained on 12/17/02, reveals degenerative changes the AC joint but no other abnormality is apparent.

**IMPRESSION:** Right shoulder pain and secondary to AC joint arthrosis and probable cervical radiculitis

**PLAN:** Dr. Starr did not think the patient was a surgical candidate as far as his neck was concern. Because of persistent symptoms in the right shoulder, localized to the AC joint (and relieved significantly with an injection in this area) treatment directed to the AC joint arthrosis was discussed today. The patient did not want another injection but wanted to try an arthroscopic debridement of this joint. The nature of this operation was carefully explained to him, with expected benefits and potential risks. The risks include, but are not confined to, infection, phlebitis, pulmonary embolism, nerve and vessel damage, complications from anesthesia, persistent pain and stiffness, the need for further surgery, and the fact that no improvement may be obtained or even that the condition may be made worse. In short any complication is possible. The patient understands and accepts, and all questions were answered. He was told that the surgery on his shoulder would have a chance to relieve pain only due to the shoulder, and any discomfort from the cervical spine but still processed. He understands and accepts. We will schedule accordingly. A prescription for Tylenol #3 was given to him today.   1/17/3

**PATIENT:** Jerome Carter              **February 6, 2003**

**CHIEF COMPLAINT:** Right shoulder pain due to AC joint arthrosis and cervical radiculitis

**PAST MEDICAL HISTORY:** Unchanged from note of 1/16/03

**PRESENT ILLNESS:** The patient is a 45-year-old male who has been experiencing discomfort from AC joint arthrosis and degenerative disk disease in the cervical spine. We have been awaiting approval for an arthroscopic distal clavulectomy and decompression. The patient awakens this morning and severe pain localized to the rhomboid muscle area on the right, and comes in now for evaluation.

**PHYSICAL EXAMINATION:** There is no spasm. The patient has pain in the lower rhomboid muscle area, which is made worse with extension of his neck and turning into the right. There is some tenderness at the AC joint on the right shoulder. Flexing his body forward and tilting his head forward causes pain in the rhomboid area on the right. Reflexes are symmetrical.
HGT: 5 ft. 8 in.
WT: 165 lbs
R: 16 /min.

cont'd

## DRS. COLLINS, JOHNSON, TOZZI & STARK, P.C.

ROBERT E. COLLINS, M.D.   DAVID C. JOHNSON, M.D.
JAMES E. TOZZI, M.D.   JOHN K. STARK, M.D.

PRACTICE LIMITED TO ORTHOPAEDIC SURGERY

PHYSICIANS OFFICE BUILDING
106 IRVING STREET, N.W. #215
WASHINGTON, D.C. 20010
(202) 291-9266
FAX (202) 291-7680

6196 OXON HILL ROAD #445
OXON HILL, MARYLAND 20745
(202) 291-3018

BOXHALL SQUARE BUILDING
3301 NEW MEXICO AVE, N.W. #318
WASHINGTON, D.C. 20016
(202) 966-2256
FAX (202) 064-4360

Jerome W. Carter                          CG 19017
COMPENSATION
CC: Gallagher Bassett
CL: 011418-011180-WC-09
SSN 126  50  5332

CARTER, Jerome                                      1/3/03

Mr. Carter returns with his shoulder MR scan which does demonstrate a fairly significant amount of AC joint degenerative changes. No particular rotator cuff pathology and no labral pathology. There is some distal clavicular osteophytic encroachment in the slight previous position to impingement here suggested. The patient's complaints, particularly his inability to internally rotate the right shoulder or to extend it backwards. I believe are fairly confidently now ascribed to the shoulder pathology and not to his developmental cervical stenosis.

I have had a thorough conversation about this with ~~Eleanor Randall~~, his rehabilitation nurse, and asked that Mr. Carter and these new imaging studies meet again with Dr. Johnson for his expert and perhaps final opinion upon any restrictions or treatment necessary with respect to the shoulder.

Mr. Carter's temperature today is 99.7, pulse 101, blood pressure 145/87. He is able to internally rotate the left shoulder bringing his thumb to approximately T6 spinous process to the right. Shoulder rotation barely reaches the L1 level. There is certainly a positive impingement sign. He did have some productive benefit from the subacromial injection he had previously. He does have tenderness over direct palpation of the AC joint itself.

JKS:mdi:lej     D: 1/6/03                                T: 1/6/03

1/10/03 cc: Gallagher Bassett

---

PATIENT: Jerome Carter                    January 16, 2003

CHIEF COMPLAINT: Right shoulder pain

PAST MEDICAL HISTORY: Allergies to penicillin. No major illnesses or surgeries.

PRESENT ILLNESS: The patient is a 45-year-old male who continues with right shoulder pain. Dr. Starr have evaluated him for neck problems, and MRI scans of both the neck and the shoulder were obtained. Because abnormalities on the MRI scan of the shoulder were identified, the patient was referred back to me for treatment. He continues with pain over the top of the right shoulder, made worse with certain movements and with lying on the right shoulder. An injection in the AC joint relieve his symptoms for a short time.

PHYSICAL EXAMINATION: The patient is alert and oriented, and appears to be in no obvious discomfort. There is tenderness over the AC joint of the right shoulder, with pain at extremes of elevation and with adduction. Provocative maneuvers for rotator cuff dysfunction are negative today. He points to the trapezius as another area of pain as well as along the rhomboid muscles on the right. There is no winging of the scapula and no spasm to these muscles. Blood pressure is 120/76, pulse is 86, respirations 14, height 68 inches, weight 165 pounds.

Cont'd

# THE WASHINGTON POST HEALTH CENTER
## MEDICAL EVALUATION

NAME _Jerone Carter_    DEPT/OCCUPATION _Pressroom G/w_

DATE OF INJURY _6/7/0¹_    TYPE OF INJURY _Neck Shoulder_

REFERRED TO _Dr. Johnson_    REASON _____

*INSTRUCTIONS TO EMPLOYEE: RETURN BOTH COPIES OF THIS FORM TO THE HEALTH CENTER WITHIN 24 HOURS OF EVALUATION OR TREATMENT.*

### TO BE COMPLETED BY PHYSICIAN

DIAGNOSIS: _® shoulder AC arthritis, Cervical stenosis_

TREATMENT: _will need shoulder surgery_

Employee may return to *FULL DUTY* on: _____

**OR**

*RESTRICTED DUTY* on: _1/17/03_

Explain **RESTRICTED DUTY** in detail: _no lifting greater than_ _10# gr now_

FOLLOW-UP TREATMENT/EVALUATION NEEDED? WHEN? _needs surgery_

_1/16/03_
Date          Physician's Signature

### TO BE COMPLETED BY WASHINGTON POST NURSE

Is employee able to return to work with stated restriction?   Yes _____   No _____
Who did you speak with in the department? _____
Other information: _____

# THE WASHINGTON POST HEALTH CENTER
## MEDICAL EVALUATION

NAME _Jerome Carter_   DEPT/OCCUPATION _PR/GW_

DATE OF INJURY _6-7-01_   TYPE OF INJURY _neck/shoulder_

REFERRED TO _Dr Starr_   REASON _F U - 11/15/02_

*INSTRUCTIONS TO EMPLOYEE:* RETURN BOTH COPIES OF THIS FORM TO
THE HEALTH CENTER WITHIN 24 HOURS OF EVALUATION OR TREATMENT.

### TO BE COMPLETED BY PHYSICIAN

DIAGNOSIS: _Developmental stenosis compounded by degenerative change And arthropathy_

TREATMENT: _continue w current therapy_

Employee may return to **FULL DUTY** on: _11·18·02  as described_
OR
**RESTRICTED DUTY** on: _____

Explain **RESTRICTED DUTY** in detail: _____

FOLLOW-UP TREATMENT/EVALUATION NEEDED? WHEN?

_11·15 02_          _John K. Starr_

Date                     Physician's Signature

### TO BE COMPLETED BY WASHINGTON POST NURSE

Is employee able to return to work with stated restriction?   Yes ____   No ____
Who did you speak with in the department?_____
Other information:_____

_____
Washington Post Nurse's Signature/Date

Northwest Health Center        Springfield Health Center        College Park Health Center
1150 15th St., NW, Wash., DC 20071    7171 Wimsatt Rd., Springfield, VA 22151    5245 Greenbelt, Rd., College Park, MD 20740
202-334-7192 FAX 202-334-7169    703-916-2240  FAX 703-916-2205    301-446-1181  FAX 301-446-1429

*ORIGNAL* TO HEALTH CENTER  *YELLOW* COPY TO EMPLOYEE'S MEDICAL RECORDS

# THE WASHINGTON POST HEALTH CENTER
## MEDICAL EVALUATION

NAME _Jerone Center_          DEPT/OCCUPATION _Pressroom G/W._

DATE OF INJURY _6/7/01_       TYPE OF INJURY _Neck. Shoulder_

REFERRED TO _Dr. Johnson_     REASON _Sho_

*INSTRUCTIONS TO EMPLOYEE:* RETURN BOTH COPIES OF THIS FORM TO
THE HEALTH CENTER WITHIN 24 HOURS OF EVALUATION OR TREATMENT.

### TO BE COMPLETED BY PHYSICIAN

DIAGNOSIS: _① shoulder Ac arthritis, Cervical stenosis_

TREATMENT: _will need shoulder surgery_

Employee may return to **FULL DUTY** on: _____
                          OR
          **RESTRICTED DUTY** on: _1/17/03_

Explain **RESTRICTED DUTY** in detail: _no lifting greater than_
_10# for now_

FOLLOW-UP TREATMENT/EVALUATION NEEDED? WHEN? _needs surgery_

_1/16/03_                    _[signature]_
Date                         Physician's Signature

### TO BE COMPLETED BY WASHINGTON POST NURSE

Is employee able to return to work with stated restriction?   Yes _____   No _____
Who did you speak with in the department?_____
Other information:_____
_____

Washington Post Nurse's Signature/Date

Northwest Health Center          Springfield Health Center          College Park Health Center
1150 15th St., NW, Wash., DC 20071   7171 Wimsatt Rd., Springfield, VA 22151   5245 Greenbelt, Rd., College Park, MD 20740
202-334-7192  FAX 202-334-7169    703-916-2240  FAX 703-916-2205    301-446-1181  FAX 301-446-1429

## DRS. COLLINS, JOHNSON, TOZZI & STARR, P.C.

ROBERT E. COLLINS, M.D.  DAVID C. JOHNSON, M.D.
JAMES E. TOZZI, M.D.  JOHN K. STARR, M.D.

PHYSICIANS OFFICE BUILDING
106 IRVING STREET N.W. #215
WASHINGTON, D.C. 20010
(202) 291-9260
FAX (202) 291-7609

KING OXON HILL ROAD 6445
OXON HILL, MARYLAND 20745
(202) 791-7011

FOXHALL SQUARE BUILDING
3301 NEW MEXICO AVE. N.W. #318
WASHINGTON, D.C. 20016
(202) 966-2236
FAX (202) 966-4309

PRACTICE LIMITED TO ORTHOPAEDIC SURGERY

2-6-03 cont'd.

Jerome W. Carter
Compensation
CC: Gallagher Bassett
CC: 011418-011180-WC-09
SSN: 126 50 5332

CC 19017

**IMPRESSION:** Right rhomboid muscle pain, most likely secondary to degenerative disease cervical spine; AC arthrosis right shoulder

**PLAN:** The patient was given a prescription for Tylenol #3 for pain control. He may continue with light duty work, avoiding overhead activities with the right upper extremity and heavy lifting. I also given him supply of Vioxx 50 mg to be taken once a day with food.

# EXHIBIT 15

# DRS. COLLINS, JOHNSON & TOZZI, P.C.

PHYSICIANS OFFICE BUILDING
106 IRVING STREET, N.W. #215
WASHINGTON, D.C. 20010
(202) 291-9266
FAX (202) 291-7689

ROBERT E. COLLINS, M.D.   DAVID C. JOHNSON, M.D.
JAMES E. TOZZI, M.D.   JOHN K. STARR, M.D.

FOXHALL SQUARE BUILDING
3301 NEW MEXICO AVE., N.W. #318
WASHINGTON, D.C. 20016
(202) 966-2236
FAX (202) 966-4369

PRACTICE LIMITED TO ORTHOPAEDIC SURGERY

6196 OXON HILL ROAD #445
OXON HILL, MARYLAND 20745
(202) 291-3018

Jerome W. Carter          CG 19017
COMPENSATION
CC: Gallagher Bassett
CL. 011418-011180-WC-01
126   50   5332

PATIENT: Jerome W. Carter          July 11, 2001

CHIEF COMPLAINT: Right shoulder pain

PAST MEDICAL HISTORY: Unchanged from note of 6/13/01.

PRESENT ILLNESS: I first evaluated patient for a muscular strain of the right trapezius and rhomboid muscles from a work related incident of 6/7/01 on 6/13/01. Physical therapy treatments were ordered immediately, but as of this date, the patient still has had no treatment. The first scheduled physical therapy treatment at Kaiser is for 6/24/01.

PHYSICAL EXAMINATION: The patient stands erect. There is excellent ability of the right shoulder. He has negative provocative maneuvers for rotator cuff disease. Neurological examination is normal. There still tenderness over the right trapezius, but not over the shoulder itself nor over the AC joint. Range of motion of the neck is normal and pain-free.

X-RAYS: X-rays of the right shoulder, dated 6/8/01, are completely normal. There is some minimal irregularity of the AC joint.

IMPRESSION: Right shoulder pain secondary to muscular strain

PLAN: The patient will exercise on his own. I will own and return to full duty work as of 7/23/01 without restrictions. I will see him again as needed.          *David Lyr* 7/11/01

7/18/01 cc. Gallagher Bassett

8-01 No Show