# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113
TELEPHONE: 202-879-3939 • FACSIMILE: 202-626-1700

Direct Number: (202) 879-3620
jholmes@jonesday.com

JP152143:mtc
876210-013001

July 9, 2007

<u>BY FIRST CLASS MAIL</u>

Jerome Carter
12807 Redgrave Drive
Upper Marlboro, MD 20774

Re:   <u>Carter v. The Washington Post</u>

Dear Mr. Carter:

As Judge Collyer ordered during our conference on June 22, 2007, we have provided below Defendant The Washington Post's understanding of the facts relating to your claim under the Family and Medical Leave Act ("FMLA") as alleged in the Amended Complaint at paragraphs 60 through 62. We have also provided The Post's understanding of the status of the most recent workers' compensation claim that you filed during your employment.

**General Background**

1.   Jerome Carter was employed by The Post from June 28, 1989 to January 26, 2005. At all times relevant to his FMLA allegations, Mr. Carter was employed as a General Worker in The Post's Springfield, Virginia pressroom.

2.   At all times relevant to his claim in this action, Mr. Carter's rate of pay was $16.826 per hour.

3.   In the twelve-month period prior to November 2004, Mr. Carter had worked sufficient hours at The Post to be eligible for leave under the Family and Medical Leave Act.

4.   At all times relevant to Mr. Carter's claim, The Post has maintained a policy on Family and Medical Leave. That policy states that an employee requesting FMLA leave must notify his supervisor and benefits administrator of the reasons why leave is needed at least 30 days in advance, if the need for leave is foreseeable, or as soon as practicable, if the need for leave is not foreseeable. The policy further provides that if the reason for the leave is a serious health condition of the employee or a family member or the birth of a child, the employee may be required to provide certification by a medical professional. A copy of The Post's Family and Medical Leave policy is attached to this letter. The Post also provides employees with paid leave in certain circumstances under its Accident & Sickness Leave policy.

WAI-2835223v3

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Jerome Carter
July 9, 2007
Page 2


**Facts Relating to Mr. Carter's FMLA Claim**

5. On October 15, 2004, Mr. Carter was placed on medical leave in order that The Post's independent medical examiner, Dr. Richard Restak, could evaluate Mr. Carter's fitness to work.

6. From November 16 through 18, 2004, while he was still on leave to accommodate his evaluation by Dr. Restak, Mr. Carter was attending to his mother, who was ill.

7. Mr. Carter remained on leave until November 19, 2004. On that date, The Post requested a meeting with him to discuss the results of his examination by Dr. Restak. Mr. Carter was scheduled to work a shift following that meeting. Although he attended the meeting with Post representatives, Mr. Carter did not report to work his shift on November 19, 2004, nor did he report to work thereafter.

8. On or about December 20, 2004, Mr. Carter submitted to The Post a medical certification from a doctor, which recommended that Mr. Carter remain out of work due to his right shoulder from November 20, 2004 to January 22, 2005. As a result, The Post granted Mr. Carter leave from November 20 through January 22, 2005. See Amended Complaint, ¶ 33.

9. The Post notified Mr. Carter on December 22, 2004 that he would be suspended for ten days upon his return to work because of his failure to report to work on November 19, 2004. Mr. Carter never served this suspension because he did not return to work prior to his termination. He had previously served a five-day suspension in October 2004 because he left work early without providing The Post with any advance notice.

**Facts Relating to Mr. Carter's Workers' Compensation Claim**

10. Mr. Carter filed an incident report on June 7, 2001 alleging that he pulled his right shoulder while dumping a large waste cart. After The Post's workers' compensation administrator denied his claim for lack of evidence of a compensable claim on June 13, 2001, Mr. Carter filed a claim with the Virginia Workers' Compensation Commission, VWC File No. 205-83-03, requesting temporary total disability benefits for the period of June 7, 2001 through July 23, 2001, as well as medical expenses.

11. After a hearing before the Virginia Workers' Compensation Commission, Mr. Carter, who was represented by counsel, was awarded temporary total disability benefits on June 19, 2002 for the period of June 14, 2001 through June 27, 2001.

12. In approximately July 2002, Mr. Carter filed a workers' compensation claim for an alleged aggravation of symptoms of his June 7, 2001 injury. On February 13, 2003, The

JONES DAY

Jerome Carter
July 9, 2007
Page 3


Post's workers' compensation administrator denied Mr. Carter's claim because it believed that Mr. Carter's complaints were not causally related to his June 2001 injury.

     13.    Mr. Carter did not pursue further his workers' compensation claim. Further, The Post understands that a three-year statute of limitations governs Mr. Carter's workers' compensation claims.

     14.    Mr. Carter was represented by William A. Butler, Esq., 8808 Old Branch Ave., PO Box 219, Clinton, MD 20735 in connection with his workers' compensation claim.

     Please contact me if you have any questions regarding the information in this letter. We have also filed a copy of this letter with the Court.

               Very truly yours,

               *Jacqueline M. Holmes/RJO*
               Jacqueline M. Holmes

cc:    The Honorable Rosemary M. Collyer (via ECF)

WAI-2835223v3

# The Washington Post

## POLICY ON "FAMILY and MEDICAL LEAVE"

Under the federal and the District of Columbia Family and Medical Leave Acts, employees who have worked at least 12 months and 1,250 hours (in the case of federal law) or 1,000 hours (in the case of D.C. law) have a right to unpaid leave for the following reasons:

**(1) the birth of a child or placement of a child for adoption or foster care with the employee,
(2) care for a family member with a serious health condition, or
(3) a serious health condition that renders the employee unable to perform the job.**

Federal law and D.C. law provide different amounts of leave. Under federal law, the employee has a right to take up to a total of 12 weeks of unpaid leave in a 12-month period. Under D.C. law, the employee has a right to take up to 16 weeks of unpaid leave in a 24-month period for the first two reasons (child birth/adoption/foster care or care for seriously ill family member) and up to 16 weeks of unpaid leave in a 24-month period for the third reason (an employee's serious illness). The 12-month and 24-month periods for determining how much leave an employee is entitled to are the 12-month and 24-month periods immediately preceding the date on which the leave is to begin.

Health benefits will be maintained during the leave period under the same conditions as if the employee continued to work. Upon return from leave, the employee has a right to be reinstated to the same or an equivalent job with the same pay, benefits and terms and conditions of employment to which the employee would have been entitled had s/he continued to work.

To qualify for this leave time, the employee must notify his or her <u>supervisor and benefits administrator</u> of the reasons why leave is needed at least 30 days in advance, if the need for leave is foreseeable, or as soon as practicable, if the need for leave is not foreseeable. Failure to meet these notification requirements may result in delay or denial of leave. If the employee is seeking intermittent leave that is foreseeable, the employee must make a reasonable effort not to unduly disrupt the employer's operation. If intermittent leave is needed, an employee should consult his or her supervisor to discuss a schedule that suits the needs of both the employee and the employer. If the reason for the leave is a serious health condition of the employee or a family member or the birth of a child, the employee may be required to provide certification by a medical professional. If the reason for leave is adoption, adoption certification must be provided. If leave is taken because of an employee's serious health condition, s/he may be required to provide certification of fitness to return to duty.

Although family and medical leave is unpaid, the employee may elect to concurrently use available vacation or personal leave. The Post will require concurrent use of any available sick leave, salary continuation, accident and sickness benefits, workers' compensation, and paid parental leave if applicable.

03/97