July 30, 2007

RECEIVED
JUL 3 1 2007
CHAMBERS OF
JUDGE COLLYER

**Hand Delivered to Court**

The Honorable Rosemary M. Collyer
United States District Court
For the District of Columbia
US Courthouse
333 Constitution Avenue, N.W.
Washington, DC 20001

    RE:    Carter v. The Washington Post    05-cv-1712
            Plaintiff Response to Defendants Letter of July 9, 2007

Dear Honorable Judge Collyer,

As instructed during our conference of June 22, 2007 below is my understanding of the facts relating to my claim that my request for Family and Medical Leave was never addressed. It is my assertion as alleged in the Amended Complaint paragraphs 60 through 62 that my FMLA claim was never acknowledged, circumvented and administratively stalled by my superiors at the Washington Post's in the hopes of terminating my employment.

**Response to General Background**

Statement 4.
In the meeting of November 19th, Plaintiff requested emergency family medical leave and gave confirmation from the hospital that his mother was very ill. Plaintiff express the need for Family Medical Leave for two reasons 1) his mother was dying and Plaintiff was attending to arranging her hospice care and 2) and Plaintiff was being treated for physical and stress related issues. At the meeting, Ms. Griffin of the Health Center advised me to contact the Benefits department to pursue my request for FMLA leave.

**Responses to Facts Relating to Mr. Carter's FMLA Claim**

Statement 5:
On October 15th Plaintiff was placed on suspension.. On October 18th Plaintiff was called at home and told not to return to work until Plaintiff went to see Dr. Restak for a fitness evaluation which would be paid medical leave. This was not a voluntary decision and Plaintiff was never informed Dr. Restak was a psychiatrist.

Jerome Carter
July 30, 2007
Page 2

Statement 6
On November 17 Plaintiff checked his home voice messages and returned call to Ms. Ford indicating that Plaintiff was out of town attending to terminally ill mother. (Amended Complaint, paragraph 31)   Plaintiff informed Ms. Ford he would be back in town on November19 for a scheduled doctor appointment and it was agreed that Plaintiff could come in for a meeting to discuss Dr. Restak's report. (Amended Complaint, paragraph 33)

Statement 7
Prior to November 19 Ms. Ford nor any Washington Post employee make mention that Plaintiff was scheduled to work.  Ms. Ford was aware the Plaintiff had a doctor's appointment because he informed her over the phone when he agreed to the meeting.  The Plaintiff was <u>only</u> informed of a meeting to discuss the results of Dr. Restak's report.

Statement 8
On  December 9, Plaintiff faxed Ms. Griffin, Health Center, regarding his leave status since during the process of trying to get the Benefits Department to give him Family Medical Leave he was informed that the system had him on administrative leave since October and the Benefits Department could not process any leave requests on his behalf. (Amended Complaint, paragraph 54-55 and 61)

Statement 9
Plaintiff was always advised that he could not return to work until Dr. Restak's requirements were met in his report. (Amended Complaint, paragraphs 29-30) .  When Plaintiff left November 19th meeting it was understood that Plaintiff was going to apply for emergency family medical leave.  Defendant never mentioned that Plaintiff was scheduled to work until Defendant notified Plaintiff in letter of December 22 in response to Plaintiffs December 9 fax to Ms. Griffin.  (See attached Letter from Dr. Restak; see attached Direct Testimony of Melinda Ford from Virginia Employment Commission hearing on April 11, 2005, Page 28, Lines 15-20)

The November 10th Letter from Dr. Restak led Plaintiff to interpret The Post wanted Dr. Restak to give them a reason to terminate Plaintiff.

Dr. Restak's response to Ms. Griffin  "I am not exactly clear what you are asking me in regard to the "return to work in an environment that he feels is hostile towards him." This would not be a contraindication to his returning to work…."<u>This, by itself, is not sufficient to recommend that he not return to work.</u>"  Plaintiff has yet to see the actual report.

Jerome Carter
July 30, 2007
Page 3

**Response to Facts Relating to Mr. Carter's Workers' Compensation Claim**

Statement 12
On December 4, 2006, Plaintiff supplied Francis Koh documentation for Washington Post attorneys concerning x-rays from accident, name of then attorney representation and name of Gallagher Bassett representative Craig Bencie to follow-up.

Sincerely,

Jerome W. Carter
12807 Redgrave Drive
Upper Marlboro, MD 20774

cc: Jacqueline M. Holmes, Jones Day



# RIVERSIDE
REGIONAL MEDICAL CENTER

Exhibit _13_
Page _5_ of _10_

November 18, 2004

TO WHOM IT MAY CONCERN:

Jerome W. Carter has been visiting his mother, a patient in Riverside Regional Medical Center. He has been here from November 16th – 18th taking care of family business.

Sincerely,

*Pat Hoadley*

Pat Hoadley
Risk Management

500 J CLYDE MORRIS BLVD
NEWPORT NEWS VA 23601-1976
(757) 594-2000
http://www.riversideonline.com/

NEUROLOGY ASSOCIATES, P.C.
NEUROLOGY AND NEUROPSYCHIATRY

*Richard M. Restak, M.D.*

DIPLOMATE, AMERICAN BOARD OF PSYCHIATRY AND NEUROLOGY

All Mail and Correspondence to the D.C. Office at:
1800 R Street, N.W.
Suite C-3
Washington, D.C. 20009
(202) 462-0455

Suburban Office:
9135 Piscataway Road
Suite 330
Clinton, MD 20735
(202) 462-0455

November 10, 2004

E. Ann Griffin, R.N.
The Washington Post
7171 Wimsatt Road
Springfield, VA 22151

Dear Ms. Griffin,

In response to your November 8, 2004 letter, I do believe that it would be mandatory for Jerome Carter to enroll in an anger management course before returning to work. There is clear-cut evidence of his propensity for angry outbursts, which would benefit from such treatment.

Also, I think that drug and alcohol testing should be done randomly upon return to work. I am a firm believer in the use of this technique in order to clarify such things as personality changes as work.

I am not exactly clear what you are asking me in regard to the "return to work in an environment that he feels is hostile towards him." This would not be a contraindication to his returning to work. Unfortunately, there are many people who are in work environments that they consider hostile. This, by itself, is not sufficient to recommend that he not return to work. If you want to clarify what it is exactly that you are asking about this, I would be happy to respond to it.

I hope that these answers have been responsive to your inquiries.

Sincerely,

Richard M. Restak, M.D.



Exhibit _____13_____
Page _____6_____ of _10_

SENT BY FAX

TO: Ann Griffin
Health Center, Washington Post, Springfield Plant

FROM: Jerome Carter

SUBJECT: Dr. Restak's Medical Evaluation Concerning Jerome Carter

DATE: December 9, 2004

On Nov. 18. 2004, in a meeting with Jan Doe; Melinda Ford, Ms. Jennings and Jerome Carter; I requested a copy of Dr. Restak's. EVALUATION REPORT OF ME. I was denied a copy and not allowed to even view the doctor's report. I am therefore making a formal written request to receive a copy of Dr. Restak's report. If you are unable to provide me with a copy of his report I would like a written explanation for why you can give me a copy. Ms. Griffin, since I have not received a copy of the doctor report I should still be on MEDICAL EVALUATION LEAVE.

*[signature: Jerome W Carter]*

VIRGINIA EMPLOYMENT COMMISSION

5520 Cherokee Avenue, Suite 100-B

Alexandria, Virginia

Monday, April 11, 2005

9:00 a.m.

IN THE MATTER OF:

Jerome W. Carter

S.S. #: 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

APPELLEE

The Washington Post

APPELLANT

The above mentioned matter came for the telephone hearing pursuant to notice in the local office of Virginia Employment Commission, 5520 Cherokee Avenue, Suite 100-B, Alexandria, Virginia, on Monday, April 11, 2005 at 9:00 a.m. before William Chambers, Appeals Examiner.

## APPEARANCES

Jerome Carter, Claimant
Melinda Ford, Employer Representative
Christine Page, Agent for Employer

**Jerome Carter**

| | | |
|---|---|---|
| 1 | Q. | Fine, so that's—really where I was going with that. Thank you. Um, now the |
| 2 | | Claimant um, in his appeal um, or in response to his claim, he indicated that the |
| 3 | | doctor that was requested that he evaluate him. Had indicated that he did not |
| 4 | | need to take an anger management course. Is that correct? |
| 5 | A. | He said that, yes. |
| 6 | Q. | And I think you tried to identify a document I'm handing you. Can you tell us what |
| 7 | | this is please? |
| 8 | A. | This is the letter written by Dr. Rustvac who did the evaluation of Mr. Carter and |
| 9 | | ah, |
| 10 | Q. | Excuse me, who was the letter to? |
| 11 | A. | It is to Ann Griffin, our Health Center supervisor or nurse. |
| 12 | Q. | And is it Ms. Griffin's, as your Health Center nurse, is it her responsibility to be |
| 13 | | the go between, between the, your employees and the medical community? |
| 14 | A. | Absolutely yes. |
| 15 | Q. | Alright, so what does this letter indicate? |
| 16 | A. | Dr. |
| 17 | Q. | Testify to it please. |
| 18 | A. | Dr. Rustvac, in this letter says it should be mandatory for Mr. Carter to attend |
| 19 | | anger management courses before returning to work. We were going to do it |
| 20 | | concurrent to his returning to work, but the doctor said before. |
| 21 | Q. | It would be our intention to enter this document into the record. |
| 22 | | WILLIAM CHAMBERS: |
| 23 | | I'm going to show it to Mr. Carter. |

December 4, 2006

Francis Koh, Esq.
Old Georgetown Law, LLC
11406 Old Georgetown Road
S. Bethesda, Maryland 10852

Dear Francis,

Attached are hospital papers from the December 19, 2001 car accident which show that there was no injury to my right shoulder which Gallagher Bassett denied my claim for surgery at the bequest of my Employer. My doctor's report from Doctor's Community Hospital had nothing to do with my neck and right shoulder injury from The Washington Post. The car accident injuries were to my left side which showed no evidence of any significant injury.

Sincerely,

Jerome W. Carter



# GALLAGHER BASSETT SERVICES, INC.

February 13, 2003

Jerome Carter
12807 Red Grave Drive
Upper Marlboro, MD 20774

RE:  Claimant:         Jerome Carter
     Our Client:       The Washington Post Company
     Date of Accident: 06/07/01
     Claim No:         011418-011180-WC-01

Dear Mr. Carter:

Gallagher Bassett Services, Inc., is the Workers' Compensation Administrator for the above captioned client. We are in receipt of your claim for Workers' Compensation benefits due to an alleged injury from an alleged incident on or around 06/07/01.

We have investigated this claim and have found no evidence to support your claim for benefits under Virginia Workers' Compensation provisions. Specifically, your current right shoulder complaints are not causally related to our work-related injury of 06/07/01. Consequently, Employer has terminated your workers' compensation benefits including temporary total disability benefits and your request for authorization for arthroscopic debridement. I recommend that you contact your health insurance carrier for payment of medical expense. In addition, you might be eligible to apply for accident and sickness leave.

We must, therefore, accordingly deny your claim.

Please call this office if you have any questions.

Regards,

Craig Bencie
Claims Representataive
Ext. 218

CB/mm

DOCTORS COMMUNITY HOSPITAL
8118 Good Luck Road
Lanham, Maryland 20706-3596
(301) 552-8513   Fax (301) 552-8518

Benjamin Stallings, M.D., D.A.B.R., Chairman
X-RAY      NUCLEAR MEDICINE      ULTRASOUND      COMPUTERIZED TOMOGRAPHY

IMAGING SERVICES REPORT

LOUIS P. KIRSCHNER,M.D. HYUNG R. YOO,M.D. MYLES KOBY,M.D. ANDREW BROWN,M.D.
BENJAMIN STALLINGS,M.D. CONG VAN LE,M.D.  JUDY GRANT,M.D. PAUL G. HARSANYI,M.D.
GERMAN TAMPE,M.D

PATIENT'S NAME: CARTER,JEROME           AGE/SEX: 46 Y/M       MR#: M000442814

ATTENDING PHYS: Oza,Manish              LOC: UNK      ACCT#: V00000486476
REFERRING PHYS:                         EXAM DATE: 12/19/2001

**EXAM#      TYPE/EXAM**
000592517 RADEC/CERVICAL SPINE 2V OR 3V
000592518 RADEC/KNEE COMPLETE 4 VIEW LEFT
000592539 RAD/CERVICAL SPINE 1V CROSS TAB

CERVICAL SPINE, CROSS TABLE LATERAL
There is no evidence of fracture or subluxation noted.

CERVICAL SPINE, AP AND LATERAL LIMITED VIEWS
There is no evidence of fracture or subluxation noted.  Straightening of the cervical lordotic curvature is seen, possibly due to muscle spasm.

LEFT KNEE
There is no evidence of fracture, dislocation or bone destruction noted.

Cc:

Report Read By: Hyung R. Yoo, M.D.     Signed By: Kirschner MD,Louis P
Transcribed Date/Time: 12/19/2001 (2300)  Transcriptionist: RDP0B0
Signed Date/Time: 12/20/2001 (0859)
Printed Date/Time: 01/05/2004 (1428)

PAGE 1          Signed Report Printed From PCI (Pci: MRKAM0)